McGINNESS v. CRUSE–OILLE MOTOR CO. et al.

No. 9423.

Court of Civil Appeals of Texas. . Galveston.

April 2, 1930.

Boyles, Brown & Scott and Frank G. Dyer, all of Houston, for appellant.

Vinson, Elkins, Sweeton & Weems and Fred R. Switzer, all of Houston, for appellees.

LANE, J.

This suit was instituted by J. E. McGinness against Cruse-Oille Motor Company, a partnership composed of H. H. Cruse and N. N. Oille, which for convenience will be hereinafter referred to as the Cruse Motor Company, and General Motors Acceptance Corporation, which will for convenience hereinafter be referred to as the General Motors Company.

Plaintiff alleged, substantially that he purchased an Oldsmobile automobile from Cruse Motor Company on or about December 17, 1928, the purchase price being $1,414; that he paid in cash $447 and for the balance of $967 he executed a sales contract, agreeing thereby to pay said sum of $967 in monthly installments; that he purchased the automobile upon the representation and guaranty of the Cruse Motor Company that there would be no change in models or price of such automobiles within ninety days from the date of purchase by him; that without such representation and guaranty he would not have purchased the automobile; that such repre-sentation and guaranty was false and untrue as to the representation that the models would not be changed in ninety days, and therefore he was fraudulently induced by Cruse Motor Company to purchase the automobile. He alleged that the sales contract had been transferred by Cruse Motor Company to General Motors Company, and that it was the owner and holder of said contract; that such contract was a nonnegotiable instrument, and that because of the fraud alleged he had rescinded his contract with Cruse Motor Company. He prayed for a recovery from Cruse Motor Company of $447, same being the sum paid by him in cash to said company, and for judgment against General Motors Company canceling the contract, and for general and special relief.

Cruse Motor Company answered by general demurrer and general denial, and the General Motors Company by general demurrer and general denial, and by cross-bill prayed for judgment against the plaintiff on the contract.

The plaintiff, by supplemental petition in answer to the cross-action of the General Motors Company, alleged substantially that the consideration therefor had failed, and that it was a nonnegotiable instrument and that General Motors Company was not entitled to judgment against him thereon.

The cause was tried before a jury upon special issues, in answer to which the jury found:

First. That the Cruse Motor Company did not represent to plaintiff before he purchased the automobile that there would be no change in the Oldsmobile car within ninety days next following December 17, 1928.

Second. That Groome, salesman for Cruse Motor Company, did represent to plaintiff before he purchased the automobile that he (Groome) knew there would be no change in Oldsmobile cars within ninety days.

Third. That H. H. Cruse did not represent to plaintiff before the purchase that he knew there would be no change in the Oldsmobile cars within ninety days.

Judgment was rendered denying plaintiff's prayer for a rescission of his contract, and against him in favor of General Motors Company for sum due on contract.

Appellant's contentions for a reversal of the judgment, reduced to their ultimate, are that the undisputed evidence shows, and the jury found, that J. H. Groome, a sales agent of the Cruse Motor Company, did represent to appellant prior to his purchase of the automobile that he (Groome) knew there would be no change in Oldsmobile cars within ninety days; that such representations were untrue and false, and he was thereby induced to purchase the automobile. That the evidence shows, as a matter of law, that Groome was

an agent of Cruse Motor Company with authority to make the guaranty which he (appellant) alleged and testified was made by Groome to him. Wherefore, the finding of the jury, in answer to special issue No. 6, that Groome made such representations and guaranties, was in effect a finding that the Cruse Motor Company, his principal, made them, and that such being the effect of such finding, it was in irreconcilable conflict with the finding of the jury, in answer to special issue No. 1, that the Cruse Motor Company did not make such representations and guaranty, as the representations of the authorized agent were, as a matter of law, the representations of the principal; that under such circumstances, the court erred in not setting aside the judgment rendered upon the verdict of the jury, upon appellant's motion for a new trial.

We are not prepared to sustain appellant's contention that the evidence shows, as a matter of law, that Groome was an agent of his principal with authority to make the representations and guaranty charged by appellant to him, or to hold that the undisputed evidence shows that he relied upon such representations and guaranty in the purchase of the automobile; but, on the contrary, we find that there was evidence to the effect that Groome, the salesman, had no authority to make the representations and guaranty charged to him by appellant; that the undisputed evidence shows that appellant did not rely upon the representations and guaranty, if any, made by Groome to him, of which he complains; that appellant, after testifying that a change had been made in the Oldsmobile car model within ninety days next after he made his purchase, testified that he met Groome, the salesman who was trying to sell him the Oldsmobile car, and that in their conversation he told Groome that he did not intend to buy any car unless he knew there was not going to be a change of the model within a short time and that he would want an absolute guaranty that the model and price would not be changed in a reasonable time; that Groome said that he (appellant) need have no fear of the model being changed, that the car he (Groome) was trying to sell was the new model which had only been out three or four months; that it was the most successful model they had ever made; that they had sold more than they had ever before, and it would be suicidal to make any changes; that they were going fine and they were selling so many; that so far as the price was concerned, of course, everybody was changing their prices, but they had the assurance there would be no change in the price of the Oldsmobile; that he asked Groome then if he would guaranty the price and model, and he said he was sure they would; that he said to Groome, "Of course you are just a salesman here aren't you?" And he said, "Yes, I am

just a salesman, but I will talk to Mr. Cruse about it." In fact, he said, "Here is Mr. Cruse now." That Mr. Groome called Mr. Cruse over and introduced him and said: "This is Mr. McGinness. He has been looking at one of our cars and he is interested in buying an Oldsmobile. I told him we could sell him one, but he is worried about the possibility of a new car coming out in a little while and we might change the price." That Mr. Cruse said, "No, we don't intend to have anything like that happen." So Mr. Groome then said: "He is asking that we guarantee him against a change in model and price, and I told him I was sure you would do that. Of course, we would not want him to tell anybody we had done that, in his case, because it might interfere with,—somebody else might come in and want the same deal that we could sell without making that guarantee." That Mr. Cruse said, "How long would you want that for?" And that he told him for a reasonable length of time; that they discussed the matter as to how long the guaranty would run and finally agreed on a guaranty for ninety days; that if the price or model were changed within ninety days he would protect him on it; that Cruse guaranteed there would be no change, but said if there did anything like that happen, if the price was reduced, he would pay him the difference, and if the model was changed he said he could bring his car in and get a new model. He said, "You can absolutely be protected on it." That in a later conversation with Groome he told him that he did not want any mix-up about the guaranty, and that Groome said: "You need not be worried about that. We will absolutely guarantee it just like we told you we would. There will be no question about that."

Testifying further, he said: "I had a complete understanding with Mr. Cruse about it. Mr. Groome had made the statement that he was sure they would make the guarantee, and I sort of intimated that I might have some doubt about his authority to do that, and he said, 'Here is Mr. Cruse, you cannot question his authority, he is one of the partners,' and he called Mr. Cruse over and we had that conversation. I didn't know whether Mr. Groome had authority to make that statement, and I thought I would feel a little better satisfied if I had the word of somebody in authority there. *If I hadn't gotten the statement which I contend was made by Mr. Cruse, I would have never made this trade. I would never have made the trade on anything Mr. Groome told me, unless I felt sure that he had the authority to do so. I wouldn't have made the trade unless Mr. Cruse had told me just what he did. Of course I would not expect to go to Mr. Cruse and repeat everything verbatim that Groome told me and said 'is that all right? Do you back that up?' I do mean to tell the jury that if I hadn't talked to Cruse on that oc-*

*casion I would not have made the trade on any statement Mr. Groome made to me."* (Italics ours.)

H. H. Cruse, a member of the firm of Cruse Motor Company, testified substantially that Groome was employed by his firm as a salesman only, and that he had no authority to make the representations and guaranty which appellant claims he made to him. He also testified that the only request appellant made to him for a guaranty was that the price of the Oldsmobile cars would not be reduced within ninety days from the time of appellant's purchase, and that before appellant closed the trade he demanded an instrument in writing showing such guaranty; that he left appellant with Mrs. Rice, stenographer for his firm, for the purpose of dictating to her the form of the guaranty; that when he returned he was handed an instrument reading as follows:

"Houston, Texas, 12/17/28.
"Mr. J. E. McGinness,
"4621 Clay,
"Houston, Texas.

"This is to guarantee the price of this Oldsmobile DeLuxe four door Sedan, purchased December 17th, against reduction for ninety days.

"That is the price will not be lowered within ninety days, and if so, we will refund the difference."

That he signed the same and handed it to appellant.

With reference to such letter, appellant testified as follows: "That letter was written there in the office. I had signed the notes (the contract of purchase) before I got that letter. I signed the notes before I asked for the letter, but I had not turned loose of them; they were lying there before me and when I signed them I told the girl that I was to get a letter of guarantee, and she went off and the next thing I knew Mr. Cruse came out and handed me this letter."

Mrs. Rice testified as follows:

"I was sitting at my desk and Mr. Cruse brought Mr. McGinness over to me and said he was ready to sign the notes. I had them lying there, and I showed them to him and Mr. McGinness said 'Now, Mr. Cruse, I would like to get that letter,' and Mr. Cruse told me what kind of letter he wanted. Mr. Cruse said he wanted a letter guaranteeing price on the car not to be changed in ninety days. Mr. McGinness was present there at my desk at that time, and helped me with the letter, and I wrote it. Mr. McGinness helped with the letter by telling me what he wanted in it. He wanted a guarantee that the price would not be changed in ninety days, and if it was we would refund the money. Mr. Cruse walked back into the shop, and I wrote the letter and called Mr. Cruse and he signed the letter and handed it to Mr. McGinness. I say that the letter was written before Mr. McGinness signed the notes because he wanted the letter before he signed them. I do mean to tell the jury that Mr. McGinness read that letter before he signed the notes. He read the letter and looked at the notes before he signed them.

"This letter which is now exhibited to me is the letter which I wrote to Mr. McGinness, guaranteeing the price of the car. That is the letter he demanded before he signed the notes; he wanted that letter and wanted it signed by Mr. Cruse before he signed the notes. Mr. McGinness was sitting right by my side at the time I wrote that letter. I was sitting at a little stenographer's desk, and he was right at my left side. I don't think there was anything to keep Mr. McGinness from seeing that letter as I wrote it, if he glanced at it. Mr. McGinness was present there at the time Mr. Cruse told me what kind of a letter Mr. McGinness wanted. All I heard Mr. Cruse say there at that time was 'You want a letter stating that the price will not be changed in ninety days. Is that right?' And Mr. McGinness said 'Yes, that is right, that the price will not change in ninety days.' Mr. Cruse left them and went back to the shop. There was nothing said by either of those gentlemen there in my presence with reference to the contents of the letter to the effect that the Cruse-Oille Motor Company would guarantee that there would not be any change in the improvements or model of the car. There wasn't anything at all said about the model of the car in my presence."

The jury found in answer to special issue No. 1 that Cruse Motor Company did not represent to appellant that there would be no change in the Oldsmobile car within the next ninety days after the date of appellant's purchase, and in answer to special issue No. 7 they found that H. H. Cruse, a member of the Cruse Motor Company, and the only one with whom appellant negotiated in the purchase of his car, except Groome, the sales agent, did not represent that no such change would be made.

The question as to whether Groome had authority to make the representations which the jury found he did make was not submitted to the jury, and no request was made for such submission. Clearly if he had no such authority, and it may be assumed that the court found from the evidence he had none, his representations would not be the representations of Cruse Motor Company, as contended by appellant, and therefore it cannot be plausibly contended that the answers of the jury to special issues Nos. 1 and 6 were in conflict one with the other.

There being no irreconcilable conflict in the answer of the jury to the issues submitted, the findings on such issues by the jury entitled

appellees to a judgment in their favor and the court properly rendered the same.

 If, however, it should be conceded that Groome had authority to make the statements attributed to him by appellant, appellant would not be entitled to a rescission of his contract of purchase, for the testimony of appellant, above cited, clearly shows that he did not act or rely upon such representations. So if the jury had found that the representations attributed to the agent were false, they would not entitle appellant to a judgment of rescission of the contract.

It is well settled that where a plaintiff seeks to recover upon the ground of false representations he must not only show that such representations were made and that they were false, but he must also go farther and show that he believed them to be true and acted thereon in executing the contract.

The issues as to whether plaintiff believed the representations of Groome to be true and relying thereon executed the sales contract, and as to whether he suffered any pecuniary damage on account thereof, were not submitted nor requested to be submitted to the jury. In such circumstances, plaintiff waived the submission of such issues and, if necessary to support the judgment, it must be assumed, under the state of the evidence, that the court found such issues against appellant. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Whitehead v. Reiger (Tex. Com. App.) 6 S.W. (2d) 745; Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Cooper Grocery Co. v. Strange, (Tex. Com. App.) 18 S.W.(2d) 609.

 It is shown that before appellant executed and delivered to appellee the sales contract he demanded of appellee a writing setting forth the guaranty appellee was to give him; that in compliance with such demand, appellee, in the presence and observation of appellant, had the following guaranty prepared and thereafter handed the same to appellant, and that appellant knew the contents thereof:

"This is to guarantee the price of this Oldsmobile Deluxe four door sedan, purchased December 17th, against reduction for ninety days.

"That the price will not be lowered within ninety days, and if so, we will refund the difference.

"Cruse-Oille Motor Co.

"By H. H. Cruse."

Appellant nowhere alleged that such written guaranty was executed by appellee or accepted by him through accident, fraud, or mistake.

Since the writing contains an express warranty, proof of an additional parol warranty is not allowable. Elmberg Co. v. Dunlap Hardware Co. (Tex. Com. App.) 267 S. W. 258; Avery Co. v. Harrison Co. (Tex. Com. App.) 267 S. W. 254; Case Threshing Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835.

In Avery Co. of Texas v. Harrison Co., 267 S. W. 254, 256, the Commission of Appeals, discussing the liability of the principal for representations of its agent and the effect of a written contract concerning the machinery sold, said:

"There are no allegations whatever on the part of plaintiffs, nor proof, to the effect that by reason of fraud, accident or mistake the written contract contained anything not agreed to by the parties, or that any promise, representation or warranty was omitted therefrom. Nor is there any allegation or proof that by any fraudulent representation, artifice, or conduct the parties were induced to sign the contract, or that at the time it was signed they did not know or were prevented from knowing what it contained. Under these circumstances it is plain that defendant was not bound by any promise or representation made by Nordyke and Hamm, not contained in the written contract. (Citing many cases.)

"In the absence of allegations of fraud, accident or mistake of the nature above indicated, it will be conclusively presumed that the written contract contained the whole agreement of the parties, and parol evidence of representations, statements or warranties not disclosed by the contract was inadmissible."

In Case Threshing Machine Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835, 836, the Court of Civil Appeals at San Antonio, discussing a similar question, announced the rule: "The rule is well settled that, where the parties have reduced to writing what appears upon its face to be a complete and certain agreement, importing a legal obligation, it will, in the absence of fraud, accident, or mistake be conclusively presumed that the writing contains the whole agreement between the parties, and parol evidence of prior or contemporaneous or subsequent conversations, representations, or statements will not be received for the purpose of adding to or varying the written instrument. Therefore a written warranty excludes proof of a parol one, and, as a general rule, an express warranty excludes the possibility of another and implied one respecting the same subject-matter. Where parties have expressly agreed upon a warranty, the law must, in the absence of fraud or mistake, conclusively presume that they have included in their express agreement whatever of warranty is to prevail between them respecting the matter to which it refers."

So, it having been admitted by the appellant that he accepted the instrument dated December 17, 1928, containing the guaranty, and the same having been in no wise attacked

by the allegations in the pleadings, he was bound thereby.

The plaintiff's cause of action is not based upon the guaranty made in said instrument, and the finding of the jury in response to special issue No. 6, the only one found in favor of the plaintiff, becomes immaterial, because under the pleading no judgment except one for the defendant could have been entered.

For the reasons above expressed the judgment is affirmed.

Affirmed.