## DALLAS RY. & TERMINAL CO. v. LITTLE et al.
### No. 12239.

Court of Civil Appeals of Texas. Dallas.
June 26, 1937.

Rehearing Denied Sept. 25, 1937.

Worsham, Burford, Ryburn & Hincks and Allen Charlton, all of Dallas, for appellant.

William H. Neary and Beverly B. Neal, both of Dallas, for appellees.

LOONEY, Justice.

Appellant, Dallas Railway & Terminal Company, appealed from an adverse judgment for damages for the death of Jewell Little, alleged to have resulted from appellant's negligence; the judgment being in favor of Marble Little, administratrix, and G. O. Little and wife, parents of the deceased. The amount recovered by the administratrix was for the pain and suffering endured by deceased from the time of being injured to her death, and the amount recovered by the parents was the pecuniary assistance of which they were deprived by reason of the death of their daughter.

Jewell Little died about 4 days after receiving injuries when a motorcycle on which she and three others were riding ran into the rear end of an unlighted street car belonging to appellant. The accident happened under substantially the following circumstances: About 1:30 a. m. January 27, 1935, C. W. Denton, motorman, was operating the street car traveling south on Haskell avenue, a public street of the city of Dallas, had passed over the track of the H. & T. C. Railway that crosses said street at right angles on an elevation of about 4 feet above the street level that slopes gradually each way, and had proceeded south on a single track to a point 142 feet from the railway crossing, where the street car line branches into a double track, and in passing from the single track on to the west line of the double track the trolley at the rear end of the car became disconnected, cutting off both power and light. At the time of this occurrence, the car was making 3 or 4 miles per hour, and could immediately have been stopped, the trolley connection re-established, and both power and light restored, but, instead of stopping and re-establishing the connection, the motorman permitted the darkened car to coast to a point 282 feet south of the railway track, where it was brought to a standstill, thereupon the motorman immediately turned and was walking through the car towards the rear for the purpose of reattaching the trolley to the wires above, and, when about halfway the length of the car, the motorcycle on which Jewell Little and three others were riding, ran into the rear or north end of the street car, with the result hereafter mentioned. The motorcycle had a boxlike side attachment or car, in which Mrs. Godwin, Jewell Little, and C. A. Stevens were riding, and was operated by John Godwin, proceeding south on Haskell, when it ran into the rear of the parked street car which was standing on the west track, killing Godwin, his wife, and Jewell Little (who died about 4 days after the accident), and seriously injuring Stevens.

The material issues raised by the pleadings and supported by evidence are sufficiently indicated by the findings of the jury, as follows: That appellant was guilty of actionable negligence in failing to sooner relight the street car after the lights were extinguished; in failing to give any warning of the presence of the unlighted street car by sounding the gong; and in failing to keep a lookout for the motorcycle just prior to the time of the collision. They also found that the collision was not the result of an unavoidable accident; that it was not solely and proximately caused by any act or omission of John Godwin the driver of the motorcycle; and that deceased was not guilty of negligence causing or contributing to cause the collision. The jury found damages in favor of the mother and father in the sum of $4,000, and in favor of the administratrix in the sum of $2,000, for which judgment was rendered in favor of the parties, respectively, from which this appeal was prosecuted. These findings of the jury, in

our opinion, are supported by evidence, and are adopted as our findings on the respective issues.

■ Appellant's main contention is that, as the evidence raised the issue of a new and independent cause, the court, in defining proximate cause, should have included the effect of a new and independent cause in the chain of causation, and should have defined the term "new and independent cause." In support of this contention, appellant insists that the circumstances show that the motorman could not reasonably have anticipated that Godwin, the operator of the motorcycle, would continue straight ahead and run into the rear end of the street car.

We cannot adopt appellant's view of this matter. We think the only thing reasonably foreseeable or likely to happen was that, a motorist on the street, especially one traveling south on the west side, would probably collide with the unlighted and unheralded car. The testimony of Denton, the motorman, indicates clearly that the thought of such a probability was in his mind. Being asked why, after the lights were cut off and the car left in darkness, he permitted it to coast 200 feet before stopping, answered that he wanted to get well in the clear of the dump (the H. & T. C. Railway track) because he did not want anything to come over the dump and hit him, which he felt might happen if the car was stopped close to the dump, saying that he took that precaution "to keep anything from running into me." If the jury had found deceased guilty of contributory negligence, plaintiffs could not have recovered—not because the contributory negligence of deceased destroyed the causal connection between the negligent act or omission of appellant's motorman, but because the failure of deceased to use ordinary care for her own safety contributed to the injury; or, if the jury had found that any negligent act or omission of Godwin, operator of the motorcycle, was the sole proximate cause of the collision, plaintiffs could not have recovered—not because the negligence of Godwin was a new and independent cause, but because it alone caused the injury.

■ Considering a very similar situation presented in Magnolia Petroleum Co. v. Owen, 101 S.W.(2d) 354, 358, Chief Justice Jones of this court used the following pertinent language: "The acts or omissions of a person charged with negligence, which caused the injury, clearly are not those of an independent agency, nor are the acts or omissions of the persons injured a 'new and independent agency'; for the one is the agency procuring the injury, and the other is the agency receiving the injury. The acts or omissions of neither are new and independent causes, as both have a direct bearing upon the right of the injured party to recover. * * * To the acts or omissions of neither party to a personal injury suit, can be ascribed the operation of a new and independent agency. It must be ascribed to some outside agency, operating to cause the injury. Karotkin Furniture Co. v. Decker (Tex. Com.App.) 50 S.W.(2d) 795; Offer v. Swancoat (Tex.Civ.App.) 27 S.W.(2d) 899; Hughes Co. v. Clark Bros. Co. (Tex. Civ.App.) 63 S.W.(2d) 230; Dixie Motor Coach Corp. v. Galvan, [126 Tex. 109,] 86 S.W.(2d) 633; Phoenix Ref. Co. v. Tips, 125 Tex. 69, 81 S.W.(2d) 60; Houston Belt & T. R. Co. v. Davis (Tex.Civ.App.) 19 S.W.(2d) 77."

We have carefully examined the authorities cited by appellant in support of its contention, but fail to find that either is in point; however, we do find in each the presence of the element of a new and independent cause. In Orange, etc., R. Co. v. Harris, 127 Tex. 13, 89 S.W.(2d) 973, 974, the independent element was the presence of an arc light maintained by the city of Orange, that blinded plaintiff and obscured a flat car on the crossing with which he collided; in Greer v. Thaman (Tex.Com. App.) 55 S.W.(2d) 519, it was an unsafe and crumbling shoulder of the highway; in Southland Greyhound Lines v. Cotten, 126 Tex. 596, 91 S.W.(2d) 326, it was the presence of a third car parked on the highway; in Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.(2d) 60, it was the blinding light of a passing vehicle; in Dixie Motor Coach Corporation v. Galvan, 126 Tex. 109, 86 S.W.(2d) 633, it was the action of a bus in crowding the vehicle causing death off the highway. Other cases to the same effect are: Swift & Co. v. Eanes (Tex.Civ.App.) 92 S.W.(2d) 522, the new element being a truck negligently parked on the highway, causing plaintiff to swerve to the left and in so doing to collide with an oncoming truck, and in Gillette Motor Transport v. Fine (Tex.Civ.

App.) 103 S.W.(2d) 196, the new and independent element, in substance, was the same as in Swift & Co. v. Eanes, supra.

Appellant argues that, as the facts presented the issue of "unavoidable accident," necessarily, the issue of "new and independent cause" was also present, requiring the court to suitably charge the jury with reference thereto. Although the court submitted the issue of unavoidable accident (which was found against the contention of appellant), we do not think the facts presented that issue, or required the court to charge the jury with reference thereto. However, we think it obvious that these issues—that is, "unavoidable accident" and "new and independent cause"— are separate and distinct. In a given case the facts presenting one may also require the submission of the other, yet this is not necessarily true in every instance. In Orange, etc., R. Co. v. Harris, 127 Tex. 13, 89 S.W.(2d) 973, 974, the Supreme Court, quoting from Dallas Ry., etc., Co. v. Darden (Tex.Com.App.) 38 S.W.(2d) 777, 779, said: "An unavoidable accident is one which is not occasioned in any degree, either directly or remotely, by the want of such care or prudence as the law holds every man bound to exercise. If the accident complained of could have been prevented by either party, by the use of means suggested by common prudence, it was not unavoidable [citing authorities]." In 20 R.C.L. 17 § 12, the doctrine is announced, as follows: " * * * It has long been recognized that no action will lie for injuries attributable to what is termed inevitable or unavoidable accident. In other words, if no fault or negligence is chargeable to either of the parties to the occurrence upon which the action is founded the loss and injury will be allowed to remain where it has fallen." Other authorities to the same effect could be cited, showing, we think, the rule to be that where, in a given cause, the facts raised the issue of an unavoidable accident, it will be found to have arisen from a situation or condition produced by the conduct of the parties participating in the occurrence, where neither is chargeable with that degree of negligence that condemns on the one hand, or that defeats on the other, yet, from the situation or condition produced by the parties to the occurrence, the injury inevitably and unavoidably happens, and this without the intervention of a new and independent cause. A new and independent cause is precisely what that language implies; that is, a new and independent agency that interrupts the causal connection between the original conduct of the parties and becomes itself the proximate cause, even though the injury would not have occurred except for the original negligence. 45 C.J. 935, 936, § 494. In support of its argument, appellant quotes just a phrase from Greer v. Thaman (Tex.Com.App.) 55 S.W.(2d) 519, 520, that seemingly supports the idea that the very presence in the case of the issue of unavoidable accident required the trial court to suitably submit the issue of new and independent cause. An examination of the Greer Case shows that both issues—"unavoidable accident" and "new and independent cause"—were present and were discussed by the court, hence we do not think the court intended to announce the doctrine that, because the evidence raised the issue of unavoidable accident, the issue of new and independent cause was also in the case and should have been suitably disposed of by the trial court. Reading the language of the opinion in the light of the facts being considered, we think the court simply meant to say that the evidence raising the issue of unavoidable accident also raised the issue of new and independent cause.

But, if it be conceded that the same facts raised the issues of unavoidable accident and of new and independent cause, yet we think that the submission of unavoidable accident was sufficient, as appellant was not entitled to have the additional issue of new and independent cause submitted upon precisely the same facts. In Williams v. Rodocker (Tex.Civ.App.) 84 S.W.(2d) 556, 558, Judge Funderburk, disposing of a similar question, said: "The appellants in pleading both 'unavoidable accident' and 'new and independent cause,' without alleging any distinguishing facts as constituting either, in effect but reiterated one plea, and the court having submitted the issue raised thereby as one of 'unavoidable accident' did not err, we think, in refusing to submit the same issue under the merely different denomination of 'new and independent cause.' Had plaintiff pleaded particular facts as constituting an unavoidable accident, and other distinguishing facts as constituting a new and independent cause, then both issues should have been submitted with reference to each group. Fox v. Dallas Hotel Co.,

294

111 Tex. 461, 240 S.W. 517." We therefore overrule appellant's assignments and propositions in regard to the matter just discussed.

Appellant complains of the verdict for $4,000 in favor of the mother and father of deceased, being the present value of the probable pecuniary aid they would have received from their daughter had she lived, as being excessive.

Deceased appears to have been an energetic young lady, 30 years of age, having had a high school education and one year in a business school; had worked for various parties in the state of Arkansas, where her family resided, and had held positions in the city of Dallas for 4 years, except several months prior to her death she had been without regular employment. Her father was 68 years of age, her mother 56; they were tenants, owning but little property and earning but little money, dependent, the testimony shows, largely upon Jewell, who seems always to have been thoughtful of their welfare, systematically contributing to them from her earnings. We think the evidence authorized the verdict, therefore the assignments and propositions in regard to this matter are overruled.

The jury found in favor of the administratrix $2,000 for the pain and suffering endured by Jewell from the time of the accident to the time of her death. Appellant contends that the verdict is excessive. We do not think so. Deceased lived 4 or 5 days after being injured. She was conscious during that period and suffered intensely, and must have known that death was hovering over her during the interim. We overrule the assignments and propositions pertaining to this matter.

Appellant complains of certain portions of the closing argument of counsel for appellees, as being prejudicial. The bill of exception shows that counsel for appellant had argued that the evidence showed that the motorman (Denton) was not negligent in any way. In reply, counsel for appellee said: "But it must be and it is the facts of this case themselves, without any argument by counsel, with which you are concerned; the effect of what you heard from the witness stand and more particularly what you heard through the written statements and admissions of the motorman, Denton. Mr. Charlton says his conduct was beyond criticism. Of course he says that, but they couldn't wait long enough to send him back to his ship, just long enough to get his deposition. His conduct on this occasion that resulted in the loss of three lives, says Charlton, was beyond criticism, we can't escape the fact that he is back with the ship and he stayed in Dallas only long enough for his deposition to be taken." In the course of the argument, counsel also said: "We are talking about the damages suffered when human lives have been taken away, and it is a matter that should be pondered and deeply considered and if the Street Railway Company, acting through Denton, its employee whom they put there, true for only a couple of months, then snatched him away for reasons we don't know, but you can make your reasonable inferences, then they should pay and, I repeat, this is not a game."

The evidence shows that Denton left the service of appellant in June following the accident in January, after several suits had been filed, and after his deposition was taken, which by agreement was for use in these cases. The reason for his leaving the service of appellant, whether voluntary or on being discharged, was not shown, although the evidence with reference to that matter was under the control of appellant. On the trial, appellant deemed it material to develop the fact that Denton was no longer in its service and did not reside in the city of Dallas, but was at Galveston, having returned to the employment formerly held before entering the service of appellant. No objection to the argument of counsel was made at the time of its delivery, being made for the first time in appellant's motion for a new trial.

It is obvious, we think, that the argument in part was provoked by the argument of counsel for appellant, and in part was based upon an inference from the facts proven; that is to say, the jury could have inferred that Denton was discharged for reasons satisfactory to appellant. Certainly, the reason for his leaving the service could have been easily explained by appellant.

Appellant also contends that, in his closing argument, counsel for appellees made certain prejudicial statements, outside the record, charging in effect that appellant, its attorney and employes were indifferent to Jewell Little's death and suffering and indifferent as to her par-

ents. This contention is based upon the following excerpts taken from the argument, to wit: "Gentlemen, I am impressed in this case with the indifference of the Street Railway Company; of their employe Denton, the motorman, who was the originating cause of this, and that indifference is. carried throughout the whole case and other employes and representatives of the Street Railway Company. * * * He tells you that the parents suffered nothing, he tells you that Miss Little did not suffer. * * * Mr. Charlton comes into the court room, again indifferent to the result of the accident, and has the temerity to tell you that E. O. Little and his wife, Minnie Little, suffered nothing by reason of the loss of their daughter; he said that the girl laying in a hospital for five days, with the shadow of death about her, seriously bruised and hurt and sweating with agony, as she. no doubt must have believed she was in the shadow of death, and he tells you that she didn't suffer; he says that they shot dope into her arms that fixed her up all right before February the First came; he shows an utter indifference, Gentlemen, This is a routine matter with Charlton. * * * Gentlemen, that is not a matter that can be treated with indifference; a human life can't be treated that way."

Appellees' case was predicated altogether upon allegations as to the motorman's negligence, which, in our opinion, was just another way of saying that the motorman was indifferent to the rights of the parties involved. The bill shows that counsel for appellant had argued that the financial loss of the parents of Jewell was small; that her suffering must have been very slight, since the hospital would not have permitted her to suffer much; that the evidence indicated they gave her something to prevent suffering; and that she did not live long. (The record discloses that drugs were administered to Jewell before her death, but their nature was not disclosed, so it was an assumption by counsel to say that something was given her to prevent suffering.)

We do not think the argument was either unreasonable or prejudicial, under all the facts and circumstances. No objection was made at the time, being raised for the first time in the motion for a new trial. Appellant pursued a lying in wait policy, speculated upon the verdict, and only emerged from ambush after an adverse verdict, and when the motion for a new trial was filed. If objections had been made at the time of utterance, suitable explanation doubtless would have been made and proper instruction given, if deemed necessary, but, having remained silent · then, appellant should not be heard to complain for the first time in its motion for a new trial. However, viewing the record as a whole, we think it affirmatively appears that appellant was not prejudiced, therefore overrule all assignments and propositions calling in question the propriety of the argument.

Appellant introduced the testimony, by deposition, of C. A. Stevens, one of· the injured parties, who said that he could not approximate the speed of the motorcycle at the time of the collision; also another portion of Stevens' testimony, to the effect that, in his opinion, the motorcycle was being operated at a speed of 35 or 40 miles per hour as it approached the street car. Thereafter, appellee introduced other portions of the testimony of the witness, to the effect that he did not know how fast the motorcycle was going prior to. the collision; thereupon, for the purpose, as stated, of explaining the testimony of the witness, appellant offered the questions and answers of said witness (too lengthy to set out) shown at pages 72–74 of appellant's brief, which, on objection, were excluded and the ruling of the court assigned as error. The assignment is overruled. The answers of the witness offered were of no particular probative value, therefore, if the court erred in excluding same, the error was harmless.

As a predicate for the contradiction of the witness Stevens, appellant propounded the following question: "Q. Did you tell Mr. L. R. Simmons, out at Parkland Hospital, that you knew that Godwin was nearly drunk at the time of the accident?" to which the witness answered, "No, sir." Appellant proposed to prove by L. R. Simmons, an officer, that at the time Stevens first regained consciousness at the hospital (several hours after the accident, and while Stevens was still in a dazed condition), he told said officer "that all of the occupants of the motorcycle had been drinking prior to the accident, and that Mr. Godwin was almost drunk," said testimony being offered not only to impeach Stevens' testimony, but also as res gestæ. On objection, the testimony of the witness Simmons was ex-

cluded, to which appellant excepted and assigns error.

We do not think the court erred. No proper predicate was laid for the introduction of the evidence offered, as Stevens was not asked whether he told the officer that all the occupants of the motorcycle had been drinking prior to the accident, hence the impeaching evidence offered varied from the predicate and was properly excluded. Neither was the evidence admissible as res gestæ, as it was a mere narrative of past acts and events, as distinguished from a spontaneous utterance created by or springing from the transaction itself.

All assignments and propositions urged by appellant are overruled and the judgment of the trial court is affirmed.

Affirmed.