**MISSOURI–KANSAS–TEXAS R. CO. OF
TEXAS et al. v. McKINNEY et al.**

No. 2062.

Court of Civil Appeals of Texas.   Waco.

Feb. 16, 1939.

Rehearing Denied April 6, 1939.

Chas. C. Huff, of Dallas, Naman, Howell & Boswell, of Waco, and Rawlings & Sayers and Nelson Scurlock, all of Fort Worth, for appellants.

Conway & Scharff, of Waco, for appellees.

GEORGE, Justice.

Mrs. Mary Lola McKinney and two children instituted this suit for damages for the wrongful death of their husband and father, J. N. McKinney, against Jackson-Strickland Transportation Company and Missouri-Kansas-Texas Railroad Company of Texas. The case was tried before the court and jury and judgment was rendered in favor of the McKinneys for the aggregate sum of $16,000 against both Transportation Company and Railroad Company on the jury's findings that the driver of the truck and the operatives of the train were each guilty of negligence in many respects, and that each act of negligence was a proximate cause of the collision between the tank car and truck.

The Railroad Company contends (1) that the trial court erred in not granting its peremptory instruction and its motion for judgment non obstante veredicto; (2) that appellees' counsel made improper argument that injuriously affected the Railroad Company's rights; (3) that the answers of the jury to issues Nos. 5 and 6, that the act of engineer Keith in driving the train over the crossing was negligence proximately causing the collision, were without any evidence to support them and were against the overwhelming weight and preponderance of the evidence; (4) that the answers of the jury to issues Nos. 9 and 10, that the failure of engineer Keith to stop the train as it approached the east edge of the concrete constituted negligence proximately causing the collision, were wholly without any evidence to support them and were against the overwhelming weight and preponderance of the evidence; (5) that the answers of the jury to special issues Nos. 10c and 10d, that the failure of engine foreman Moody to stop his train as it approached the east edge of the concrete constituted negligence proximately causing the collision, were wholly without any evidence to support them and were against the overwhelming weight and preponderance of the evidence; (6) that the answers of the jury to issues 18 and 19, that the failure of the engineer to blow the whistle as the train approached the east edge of the concrete constituted negligence proximately causing the collision, were without any evidence to support them and were against the overwhelming weight and preponderance of the evidence; (7) that there is an irreconcilable conflict between the jury's findings that engineer Keith was negligent in driving the train across the highway over the crossing, that engineer Keith was negligent in failing to stop the train as it approached the east edge of the concrete highway, and that engine foreman Moody was negligent in not stopping the train as it approached the east edge of the concrete highway and the jury's finding that the operator of the truck was negligent in failing to yield the use of the crossing to the train and that such failure was negligence and the proximate cause of the collision; (8) that the court erred in entering judgment against the Railroad Company for the reason that no issue was submitted to the jury inquiring as to whether any of the acts of negligence submitted constituted a proximate cause of the death of McKinney; (9) that the court failed to properly charge the jury on the burden of proof with reference to the issue of unavoidable accident; (10) that the

court's definition of "unavoidable accident" was erroneous.

The Transportation Company's truck at about 6:30 A. M., July 5, 1936, ran into the Railroad Company's tank car on the crossing on the concrete portion of State Highway No. 2, about five miles north of Waco, knocking it over on J. N. McKinney and instantly killing him. The tank car was near the center of the pavement. McKinney, who was a car inspector in the employ of the Railroad Company, was riding on the running board on the south side of the tank car. The train consisted of an engine, tender and empty tank car and was approximately 100 feet in length. The truck and its attached trailer had a load of 10,213 pounds of steel lockers. The train approached the crossing from an easterly direction and the truck from a northerly direction. The concrete pavement is twenty feet wide and the right-of-way on each side thereof is forty feet. The train came to a stop when it reached a point about thirty-five or forty feet from the eastern edge of the concrete, at which time both engineer Keith and engine foreman Moody saw the truck. The train remained stopped only ten or twelve seconds, then proceeded west. It had been raining intermittently during the morning. The highway was wet and the sun was just fixing to shine. There was testimony to the effect that the speed of the truck was from twenty to twenty-five miles per hour; that the speed of the truck was from sixty to sixty-five miles per hour; that the truck traveling at sixty miles per hour with its load on the wet pavement could not have been stopped under 550 feet; that the train traveling at five or six miles per hour could have been stopped in two or three feet by being "big holed;" that when the train started up from its stopped position, the truck was about 850 feet from the crossing; that the truck at that time was three-fourths of a mile north of the crossing; that when the front end of the engine reached the eastern edge of the concrete the truck was 120 feet north of the crossing; that the truck at such time was five or six hundred feet north of the crossing; that the truck at such time was between 1,000 feet and one-fourth of a mile north of the crossing; that the train was not going over two or three miles per hour as it approached the eastern edge of the concrete; that it was traveling at such time at the speed of between four and five miles per hour; that it was traveling at the rate of five or six miles per hour at the time of the collision; that it was traveling at the rate of fifteen miles per hour at the time of the collision; that it was traveling at the rate of between twenty and twenty-five miles per hour when it entered upon the concrete portion of the crossing; that engineer Keith and engine foreman Moody realized at the time the train reached the eastern edge of the concrete that the truck was coming into a field of danger, and that a collision would occur if it didn't either slacken its speed or stop; that the truck did not slacken its speed from the time it was first observed until it reached a position of about 120 feet north of the crossing; that engineer Keith and engine foreman Moody knew that few cars made less than sixty miles per hour on that highway if they could get it out of them; and that engineer Keith continuously increased the speed of his train until the time of the collision.

Thus, it is obvious that the evidence is conflicting and some of it contradictory not only within itself but with the physical attendant facts and happenings, that different inferences may properly be drawn from the facts depending wholly upon the grouping and acceptance of certain facts and circumstances as true and the rejection of others as incorrect, and that there is an irreconcilable dispute about the principal facts. It would possibly be true that there was an absence of negligence shown on the part of the operatives of the railroad if we should accept as correct the version given by the witnesses for the railroad to the effect that the truck was traveling at a speed of sixty miles per hour and was from three-fourths to one mile north of the crossing when the train started up thirty-five or forty feet east of the concrete, that there was nothing in the manner in which the truck was being operated that would indicate a collision between the truck and the train, and that the train traveled at a rate of speed from no miles to fifteen miles per hour, yet such testimony does not account for the collision, for it would have taken the truck from forty-five to sixty seconds to reach the crossing and the train would have cleared the crossing in less than thirty-five seconds. On the other hand, if we accept Mrs. Rappe's testimony with reference to the position of the truck at the time of the starting up of the train, and the testimony of the operatives of the

railroad as to the respective rates of speed of the truck and train, then both the train and truck would have reached the center of the concrete crossing at about the same time; and again, if the truck and train were traveling at the speeds given by the truck driver and were at the positions stated by him, the collision could have taken place in about the manner in which it happened. The operatives of the train saw the truck, the manner of its operation and the speed at which it was being driven, knew that the pavement was wet and foresaw the probability of the collision and injury in the manner in which it took place as the train approached upon and over the concrete pavement. They knew that they could stop the train in two or three feet and that it would take some distance for the truck driver to stop his truck on account of the wet pavement. If they did not act under the circumstances in the respects charged as an ordinarily prudent person would have done, then they were guilty of negligence in such respects. It was the function of the jury to pass upon the credibility of the witnesses, weigh their testimony and accept such parts thereof as comported with their experience and training and draw from the facts and attendant circumstances such reasonable deductions as they believed warranted. Reed v. Hester, Tex.Com.App., 44 S.W.2d 1107, pars. 1 and 2; Wininger v. Fort Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150, par. 2; Harpold v. Moss, 101 Tex. 540, 109 S.W. 928, pars. 1 and 2; Hamilton v. Maroney, Tex.Civ.App., 57 S.W.2d 1125, pars. 1 and 2. We are not authorized to weigh evidence to determine where greater weight lies. Schaeffer v. Reineke, Mo.App., 121 S.W.2d 213. We, after a careful study of the entire record, have reached the conclusion that there is substantial evidence of probative force in the record to support the jury's findings of negligence proximately causing the collision in the respects hereinbefore mentioned, and that same should be accepted as our findings. Austin Electric Ry. Co. v. Faust, 63 Tex.Civ.App. 91, 133 S.W. 449, par. 2; Southern Pacific Co. v. Ralston, 9 Cir., 67 F.2d 958; Lancaster v. Fitch, 112 Tex. 293, 246 S.W. 1015, par. 2; Texas Power & Light Co. v. Stone, Tex.Civ.App., 84 S.W.2d 738, pars. 1 and 2. Therefore, propositions Nos. 1, 2, 8, 9, 10, 11, 13, 14 and 15, and the assignments of error on which they are based, are overruled.

The arguments complained of in propositions Nos. 3, 4 and 5 are as follows: "Life is cheap to these corporations; it didn't mean very much to them to take the life of this woman's husband. * * * this railroad corporation used the life of Mr. McKinney for nineteen years and when they wiped that life out they left her cold with two orphan children. * * * they complain about James' school work. Went to his school records and searched them and found he wasn't in school, and if they had found anything bad about Jim, don't you suppose they would have dragged it into this court room and humiliated this young man and embarrassed him." The record reveals that McKinney had worked for the railroad nineteen years and that he left surviving him a wife and two minor sons; that his death was not occasioned by any fault on his part; that he had earned the preceding year $2,135; that his life expectancy was almost twenty-one years; that he worked around his home and assisted his wife in the upkeep of the home in the afternoons; that he was fond of his family and wanted to give his sons an education. The attorney for the truck company in his argument attempted to show that an aggregate amount of $7,800 would fully compensate the widow and sons for the loss of the father and husband. The attorneys for the railroad company in their argument insisted that if McKinney could gaze upon the trial from the battlements of High Heaven, he would put a restraint on his wife and sons in their effort to convict the operatives of the train of negligence and that the operatives of the train were so closely tied to McKinney that it grieved them beyond expression to even view his lifeless form, etc. The cross examination of the widow by the railroad attorneys disclosed that a search had been made of the school records with reference to one of the sons and that it was their purpose to convince the jury that he had not accomplished anything by attending school and that he was not interested in an education. Such records were not offered in evidence. The argument, under such circumstances, did not amount to an appeal to the jury to go outside of the record and determine issues from prejudice or bias, but was in part invited by the argument of counsel for the railroad and transportation company and in part based upon the proven facts. Karotkin Furniture Co. v. Decker, Tex.Com.App., 50 S.W.2d 795; Dallas Ry. & Terminal Co. v. Little, Tex.

Civ.App., 109 S.W.2d 289; Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.2d 1032; National Life & Accident Ins. Co. v. Harris, Tex.Civ.App., 118 S.W.2d 838; Republic Underwriters v. Howard, Tex. Civ.App., 69 S.W.2d 584; Russell v. Bailey, Tex.Civ.App., 290 S.W. 1108; Rio Grande, E. P. & S. F. Ry. Co. v. Dupree, Tex. Com.App., 55 S.W.2d 522, pars. 16–19; Wells v. Henderson, Tex.Civ.App., 78 S.W. 2d 683; Davis v. Hill, Tex.Com.App., 298 S.W. 526; St. Louis, S. F. & T. Ry. Co. v. Green, Tex.Com.App., 37 S.W.2d 123; Teston v. Root, Tex.Civ.App., 95 S.W.2d .524.

■ The findings of the jury are not in real and irreconcilable conflict for the reason the pleadings join and the evidence raises the issues of concurring actionable negligence in the respects mentioned. All such findings could be true and each finds substantial support in the evidence. Belzung v. Owl Taxi, Tex.Civ.App., 70 S.W. 2d 288; McGinness v. Cruse-Oille Motor Co., Tex.Civ.App., 26 S.W.2d 1095; Manlove v. Lavelle, Tex.Civ.App., 235 S.W. 324; Northern Texas Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41; St. Louis, B. & M. Ry. Co. v. Cole, Tex.Com. App., 14 S.W.2d 1024; Baylor University v. Bradshaw, Tex.Civ.App., 52 S.W.2d 1094.

■■ The findings of the jury that the concurring actionable negligences of the operatives of the railroad and the truck driver were proximate causes of the collision are in fact findings that such negligences were proximate causes of the death of Mr. McKinney. Hankins v. Harlan, Tex.Civ.App., 114 S.W.2d 588. Limiting the inquiry as to the cause of the collision did not omit the element of foreseeableness of such injury or a similar one in the light of the attending circumstances because the jury could not have, under the court's instructions, found such negligences were the proximate cause of the collision without having first reached the determination that a reasonably prudent person would have foreseen or anticipated such injury or a similar one.

■ The submission of special issue No. 227 in the following form, to-wit: "Do you find from a preponderance of the evidence, if any, that the death of J. N. McKinney was not the result of an unavoidable accident as to the defendant, Missouri-Kansas-Texas Railroad Company of Texas? Answer 'It was the result of an unavoidable accident' or 'it was not the result of an unavoidable accident.'" was not erroneous under the authority of Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956; Gulf, C. & S. F. Ry. Co. v. Giun, Tex.Com.App., 116 S.W.2d 693, 116 A.L.R. 795.

■ The trial court defined "unavoidable accident" as follows: "You are charged that an 'unavoidable accident" as used in the above issue No. 227, is meant a happening which could not have been anticipated by a reasonably prudent person in the exercise of ordinary care when viewed in the light of the attending circumstances, and which happened without the negligence proximately causing the death of J. N. McKinney, on the part of the defendant Missouri-Kansas-Texas Railroad Company of Texas, its agents, servants and employees engaged in the operation of the train in question." and appellant Railroad Company says such definition of "unavoidable accident" is erroneous in that it required the jury to find conjunctively two conditions as a requisite to their finding of unavoidable accident, to-wit, (1) that it was a happening which could not have been anticipated by a reasonably prudent person in the exercise of ordinary care when viewed in the light of the attending circumstances, and (2) that it was without negligence on the part of the Railroad Company. If the death of McKinney could have been anticipated by a reasonably prudent person in the exercise of ordinary care when viewed in the light of the attending circumstances, then it could not have been an accident, because an accident is an occurrence that could not have been foreseen by a prudent person. Trinity County Lumber Co. v. Denham, 85 Tex. .56, 19 S.W. 1012; Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S.W. 673, L.R.A.1916E, 945, Ann.Cas.1918A, 517; Vesper v. Lavender, Tex.Civ.App., 149 S. W. 377; 20 R.C.L. 20; Fort Worth & R. G. Ry. Co. v. Sageser, Tex.Civ.App., 18 S.W.2d 246, par. 8; Tabor v. McKenzie, Tex.Civ.App., 49 S.W.2d 874. And the collision could have been unavoidable as to the Railroad Company only where the death of J. N. McKinney was not proximately caused by any negligence of commission or omission on its part. Stedman Fruit Co. v. Smith, Tex.Civ.App., 28 S. W.2d 622, par. 5; Tarver v. Vallance, Tex. Civ.App., 97 S.W.2d 748, par. 6; Texas & P. Ry. Co. v. Edwards, Tex.Com.App., 36

S.W.2d 477; Dallas Ry. & Terminal Co. v. Darden, Tex.Com.App., 38 S.W.2d 777; Forehand v. International & G. N. Ry. Co., Tex.Civ.App., 60 S.W.2d 830, par. 3.

The judgment of the trial court is affirmed.