No. 18,655.

ANNIE HARBERT, *Appellee*, v. THE KANSAS CITY ELE-VATED RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. DEATH—*Trespasser—Riding on Steps of Street Car—Wantonness of Railway Employees—Liability of Railway Company.* A finding that the conductor of an electric street car was guilty of such wantonness as to authorize a recovery against the company, regardless of any question of contributory negligence, is authorized by evidence that he ran his car without stopping, past a station and upon a bridge, knowing that a man was riding outside of the car in such a position that he would necessarily be struck by a beam of the bridge and severely and probably fatally injured.

2. SAME. A recovery against the company on account of a death which was occasioned in the manner indicated is not precluded by the fact that before the car left the station at which the person who was killed got upon it, an employee of the company warned him of the danger of his position, tried to persuade him to get off the car, and even used physical force to that end without avail.

3. PLEADINGS—*"Negligence"—"Wantonness."* Where a petition alleges that the defendant committed acts amounting to wantonness, but characterizes the conduct complained of simply as "negligence," no error is committed in allowing wanton misconduct to be charged in express terms, even after the limitation period has expired.

Harbert v. Street Railway Co.

4. DEATH — *Elements of Damages* — *Instructions* — *Pecuniary Loss.* In a death case a statement in the charge that the jury might consider the loss by the plaintiff of the society, aid and comfort of her husband, held not to have been prejudicial, the same instruction having twice stated that recovery could only be had for pecuniary loss,.and the amount awarded having been moderate.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 7, 1914. Affirmed.

*O. L. Miller,* and *C. A. Miller,* both of Kansas City, for the appellant; *Samuel Maher,* of Kansas City, of counsel.

*J. E. McFadden,* and *O. Q. Claflin,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: Thomas Harbert was killed while riding upon a car of the Kansas City Elevated Railway Company. His widow recovered a judgment against the company, from which it appeals.

At about 5:45 in the afternoon of October 7 Harbert was waiting with a large number of other persons at the State Line station. It was carnival week in Kansas City, Mo., and the traffic was very heavy. A west-bound car stopped at the station, but it was filled practically to its capacity. It had a closed vestibule, the doors, the upper part of which were of glass, opening inward. One or more persons got off the car, but the door was immediately closed, and not reopened. Harbert made an attempt to board the car, but succeeded only in getting upon the step. An employee of the company who was at the station, one of his duties being to see that persons should not attempt to ride on the outside of the cars, tried to persuade Harbert to get off, but without success. He then attempted to remove him by force, but Harbert resisted his efforts, and after a

delay of five minutes had been caused in this manner he signaled the car to proceed, with Harbert still standing on the step and clinging to the car. The next station was at James street, where no stop was made. Between James street and the next station the track crosses a bridge over the Kansas river, the iron pillars of which are so near the track as to leave but little clearance. As the car ran upon this bridge Harbert struck one of these pillars and was knocked off the car, receiving fatal injuries.

The principal question involved is whether the established facts preclude a recovery by the plaintiff. Obviously Harbert was guilty of such misconduct that no liability could attach to the company upon the basis of any mere negligence on its part. The court instructed that if Harbert rode upon the outside of the car in spite of the objections of the company's employees (which the jury found to be the case) he was a trespasser, and the defendant owed him no duty except not to injure him wantonly. Therefore, in order to justify the verdict rendered, the evidence must have warranted a finding of wantonness. Whether it did so is the exact question to be determined. We think an affirmative answer must be returned, on the ground that the jury may reasonably have concluded that the following were the essential facts of the tragedy: The conductor knew that Harbert was riding on the step outside of the car. He knew that the pillars of the bridge were so near the track that if Harbert remained in that position the swaying of the car was certain to cause him to be struck and probably killed. Harbert did not know that the pillars were close enough to strike him, and at all events, after the James street station had been passed, could have done nothing to extricate himself from his predicament. After passing James street the conductor knew that Harbert was utterly unable to help himself, and knew that if the car proceeded at its usual speed, without stopping to allow Harbert to get off, or

to enter the car, he would be certain to strike one of the iron pillars and be seriously and probably fatally hurt. Knowing that such course must result in the injury and probable death of Harbert, he allowed the car to go on without even slackening speed, to the inevitable catastrophe. The conductor therefore, having the power to save Harbert's life, deliberately allowed him to be killed. This amounted to wantonness and rendered the company liable irrespective of Harbert's own misconduct.

In *Holwerson v. St. Louis & S. Ry. Co.*, 157 Mo. 216, 57 S. W. 770, cited by the appellant, this language is used, suggesting that what might be called "contributory wantonness" should constitute a defense analogous to contributory negligence:

"But will it be said that human imagination can not conceive a case of wantonness on the part of both parties? The answer is plain. Wantonness by both parties is just as conceivable as negligence by both parties. But a single illustration will suffice to point the rule. A man determines to commit suicide. He has no property and no life insurance. He will leave his family destitute. To provide for his family, he lies down on a railroad track. The track is straight, and the engineer can easily see the man on the track in time to stop the train before killing him. Instead of doing so, he intentionally and wantonly increases the speed of the train and runs over the man. The widow or children sue the railroad company for damages, and upon proof that the railroad employees wantonly inflicted the injury they recover a verdict, and thus the deceased has provided for his family at the same time he has carried into effect his intentional or wanton purpose to destroy himself. The wantonness of the defendant is made the sole determining factor in the solution of the problem of liability, and the wantonness of the deceased is not considered or taken into account, when, if it had been, the result would necessarily have been the same as in a case of negligence and contributory negligence." (p. 242.)

We express no opinion as to the liability of the company in the imagined circumstances, but assuming the suggestion made to be sound, it does not follow that the present judgment should be reversed. However reprehensible the conduct of Harbert may be considered, it did not compel the conclusion that he desired to be killed. He may have supposed that by keeping close to the car he could escape contact with the bridge. He may have assumed that after the car had proceeded far enough to avoid the rest of the crowd, the conductor would let him in. There was evidence that he pounded on the door and called to those inside to open it and admit him. He may have calculated that there would be passengers to alight at the James street station, and that he would then be in a position to effect an entrance. One witness testified that he said he was going to ride the car to Riverview (across the river), but the testimony as to just what he did say was conflicting, and the jury may well have doubted his saying he was going to ride on the outside of the car to any particular place, when he was obviously struggling to gain an entrance. Moreover, as already stated, after the James street station had been passed there was nothing he could do to prevent the catastrophe. Only the employees of the company could save him, and one of them—so the jury must be deemed to have found—knowing of his peril, refused to exercise the power which he possessed to spare his life. The contention is made that there was no evidence that the situation of Harbert was known to the conductor, who denied all knowledge of it. One witness, however, speaking of the circumstances under which the car left the State Line station, said: "The conductor gave two bells and went on. When the conductor gave the bells he was standing in the exit side of the circle and was looking right out towards the door, towards the gentleman on the steps. The conductor could see

through the glass door and see the man on the steps."
This witness added later that he could not say for sure
whether the conductor could see the man, because he
could not remember how tall the men were who were
standing in front of him.    Another witness testified:
"The conductor on the inside of the car said to Harbert,
'You can't ride in here,' or 'You can't ride here,' or
something to that effect."    He was asked: "What did
you see the conductor do while the car stood there?"
He answered: "Well, he wasn't doing anything, only,
I believe, he reached over and rapped on the door and
told the fellow to get off."    Clearly it was a fair ques-
tion for the jury to determine whether the conductor
knew of the presence of Harbert.

The original petition referred to the conduct of the
company as constituting "negligence," not using the
term "willful" or "wanton."    After the evidence was
in (and after the time had elapsed within which an
original action could have been begun), she was al-
lowed to amend her pleading by the insertion of both
these adjectives, qualifying the term "negligence"
wherever it was used.    The allowance of this amend-
ment is complained of.    The petition charged the de-
fendant with the commission of acts which, as we have
already determined, amounted to wantonness.    The
original omission to characterize them in so many
words as such was not material, and the subsequent ad-
dition of such characterization was not prejudicial.
(*Way v. Bronston,* ante, p. 446.)

Complaint is made of the instruction given regard-
ing the measure of damages.    The jury were told that
they might take into consideration "the station in life
of the deceased and the plaintiff," and the sentence of
which this was a part was open to the construction
that the jury might consider the "age, health, occu-
pation and character" of the plaintiff as well as of the
decedent.    The criticism is rather verbal than sub-

stantial. The enumeration of the matters to be considered in this connection included "the loss by the plaintiff of the society, aid and comfort of her husband." But in the same instruction, both before and after the words just quoted, the jury were expressly told that the allowance should be for such sum as would compensate the plaintiff for her pecuniary loss. The verdict was for $2000, and it seems clear that no actual prejudice resulted. The language used in *Stoner v. Kansas City,* 89 Kan. 554, 132 Pac. 207, is directly applicable: ·

"Standing alone, the statement might be taken as authorizing solace money as an independent item of damages. It was preceded and followed, however, by other statements which expressly limited recovery to pecuniary damages only, and consequently it is not likely that it was misconstrued."

The judgment is affirmed.