No. 20,090.

ARTHUR BRIGHAM, a minor, by his next friend, *Appellant*, v.
THE UNION TRACTION COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

INTERURBAN RAILWAY — *Personal Injuries — No Actionable Negligence
Shown*. The evidence considered, and held insufficient to establish
actionable negligence on the part of an interurban railway company
toward a passenger who was injured by coming in contact with a
trolley pole at the side of the track, while riding on the bottom step
of a car.

Appeal from Montgomery district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed May 12, 1917. Affirmed.

*Hal R. Clark*, of Independence, for the appellant.

*Chester Stevens*, of Independence, and *John J. Jones*, of Cha-
nute, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal
injuries sustained by a passenger on an electric interurban
car by coming in contact with a trolley pole at the side of the
track. A demurrer.to the plaintiff's evidence was sustained
and he appeals.

The plaintiff boarded the car at the interurban station in
Independence for the purpose of attending a Fourth of July
celebration at Cherryvale. The entrance of the car was at the
rear and on the right side. The rear of the car was inclosed,
except that the windows were not in. There were handholds
on each side of the steps, two in number. The plaintiff took
a position on the lower step, facing the inside of the car, and
while riding there was struck by the trolley pole and injured.
The charges of negligence contained in the petition were that
the .track was not kept in proper condition, that the plaintiff
was not afforded a safe place in which to ride, and that the de-
fendant, knowing the plaintiff was in a position of peril, pro-
pelled its car forward to the inevitable catastrophe. At the.
conclusion of the plaintiff's evidence the petition was amended

to include a charge of negligence in maintaining the trolley pole too near the track.

There was no evidence to sustain the charge that the track was out of repair. Witnesses testified that the car swayed from side to side and dipped and rocked. A witness who stood, not inside the car, but on the second step, and who was facing outward, said he had to hold with one hand to stand up. It required no witnesses to inform the court that the lateral motion of an interurban car is limited absolutely by the flanges on the wheels, and the list of a car, caused by even considerable difference in level of the rails, computed mathematically, is comparatively inconsiderable, although it may disturb the equilibrium of a standing passenger. There was no contention that the plaintiff was pitched outward by the swaying of the car at the time he was injured. There was no evidence that the motion of the car was unusual or extraordinary at the time the plaintiff was injured. There was no evidence that the car leaned toward the trolley pole when opposite the pole. There was no evidence that the track was not level at that point.

There was no evidence that the trolley pole was negligently placed too near the track. One witness said the pole was from six to fifteen inches closer to the track than the next five or six poles. This estimate, which on its face was a guess, proved nothing because there was no evidence of the distance of the pole from the track, or evidence of what the minimum distance compatible with safety may be.

The principal contention was that the plaintiff was not afforded a safe place to ride because of the crowded condition of the car. The evidence was that the plaintiff, two companions, Edwards and Alexander, and an acquaintance, Burns, were the last to board the car before it left the station. The plaintiff and his companions were "feeling good and having a good time." The plaintiff and one of his companions went to the front of the car and asked admission there, which the conductor denied, and then went to the rear and boarded the car. Edwards reached the platform, Alexander stood on the second step. Burns and the plaintiff stood on the bottom step. After the car had proceeded some distance, and before the plaintiff was injured, Burns climbed back on the bumper. The evidence contains many statements that the car was crowded, that the

platform was badly crowded, that it looked impossible to get on, and that the car was so crowded that the plaintiff and his friends could not get on the platform. The undisputed evidence of the plaintiff and of Alexander was that there was room in the forward end of the car. The plaintiff testified as follows:

"Q. Why did you want to get up in the front end of the car? A. Why, I thought we would just get up there, there was some friends up there I knew, I don't recollect their names at present.

"Q. Was there room in there for you? A. Yes, sir.

"Q. The reason you wanted to get in there was because you had friends and there was room for you to get in there? A. Yes, sir."

Alexander testified that he did not know how much room there was in the front end of the car, but he did know that there was a good bit of standing room there. Besides this, after the car started on its journey it stopped at a street crossing and took aboard three more passengers, two women and a man, who secured safe places on the car without difficulty. The plaintiff and Burns alighted to allow these passengers to get on. There was no evidence that the plaintiff or either of his friends exerted any effort whatever to get inside the car, or even on the platform. Knowing of space in front, they made no request upon occupants of the platform to let them through, nor used the slightest diligence to secure themselves from the peril of riding on the car steps. It is idle to contend that the car was overcrowded when the plaintiff reached it. Every person aboard had a safe place and there was room for more in front. Likewise, it is idle to contend that it was impossible for the plaintiff to get beyond the first step of the car, when he made no attempt to do so, indicated no desire to do so, and when he stepped down to allow three other passengers to enter the car. This is not a case of substantial conflict in the evidence, to be resolved by the jury. It is a case in which facts not controverted by any one, and admitted by the plaintiff to be true, preclude him from denying that he voluntarily chose to ride on the car step instead of inside the car.

The plaintiff cites many cases involving injuries suffered by persons on overcrowded street cars, but they need not be reviewed. For example, the case of *Topeka City Rly. Co. v. Higgs,* 38 Kan. 375, 16 Pac. 667, is cited as a parallel case. In that case the facts were that a great concourse of people

assembled in the city of Topeka on the occasion of a sham battle at the fair grounds during a soldiers' reunion. As a car filled with people from the city approached the usual stopping place at the fair grounds, a crowd of people desiring to return to the city surged on the car and occupied the seats as fast as they were vacated. Higgs, who was crippled, was unable to secure a seat, although he had waited until probably twenty-five cars had started, hoping that he might do so. He took a position on the footboard of the car, which was an open one, and held to one of the posts which supported the roof of the car. He was accepted as a passenger and paid his fare. Many others occupied the footboards of the car, and on occasions when the capacity of the railway company was overtaxed it was the usage and practice to carry passengers on the footboards. While the car thus loaded was on a switch, the motorman propelled it so near to the intersection of the switch with the main line that a closed car passing on the main line squeezed Higgs against the post to which he was clinging and injured him. Because the car was handled in such a way as to imperil passengers on the footboards, it was held the railway company was guilty of negligence. Because of the usage and practice of the company to carry passengers on the footboards during rush times, it was held that Higgs was not guilty of contributory negligence. The distinction between the two cases is obvious.

There was no evidence that the conductor knew the plaintiff remained on the bottom step after the car left the interurban station or after the journey was resumed at the street crossing. Consequently there was no basis for a charge of wantonness on the part of the conductor in not preventing the plaintiff from riding on the car steps. The plaintiff cites the case of *Harbert v. Street Railway Co.*, 91 Kan. 605, 138 Pac. 641. The court regards the two cases as quite dissimilar.

Because actionable negligence on the part of the defendant was not established, the demurrer to the plaintiff's evidence was properly sustained, and the judgment of the district court is affirmed.