DORIS KATSUKO GINOZA, AND STANLEY TOSHIO GINOZA AND JUDY MICHIKO GINOZA, MINORS, BY DORIS KATSUKO GINOZA, THEIR PROCHEIN AMI *v.* KOSUKE TAKAI AND SHIGEKO TAKAI, DOING BUSINESS AS TAKAI ELECTRIC COMPANY.

NO. 2936 AND NO. 2937.

ARGUED JULY 1, 1953.          DECIDED JANUARY 14, 1955.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

692

694

OPINION OF THE COURT BY TOWSE, C. J.

Cross appeals by way of bills of exception were taken from a judgment of $72,500 and costs awarded to Doris Ginoza and her two minor children for the wrongful death of her husband.

The plaintiffs below, referred to herein as appellees, attack only the action of the trial judge in reducing the $80,000 verdict of the jury by $7,500, that amount representing the sum tendered to the plaintiffs below for the unconditional release of the Hawaiian Electric Company, Limited, prior to the institution of the instant proceedings

in the apportioned amounts of $5,000 to the widow and $1,250 to each of the minors.

The defendants below, referred to herein as appellants, seek reversal of the judgment principally upon grounds of alleged errors committed during the course of the trial.

In September, 1949, Doris Ginoza telephoned the appellant partnership doing business as the Takai Electric Company, and secured an estimate for the installation of four electric pull-chain lights and a wall plug in the Ginoza home in Honouliuli. Shortly thereafter she telephoned acceptance of the estimate and ordered the installation. The testimony is in conflict upon whether a discussion took place at that time regarding compliance with applicable regulations governing electrical installations—the appellants contending that compliance with all governing regulations would have required more work than requested in the original estimate—the appellees contending that the estimated figure be construed to include the cost of the entire installation agreed upon. On October 6, 1949, the installation was made by the defendant Kosuke Takai and his helper. They were accompanied to the home on that day by the widow.

The installation consisted of a length of flexible corrugated-metal tubing designated in the trade as "armor" or "BX" cable, which was connected to the switch box and thence beneath the floorboards of the house to the wall-plug outlets. Within the BX cable there was a second cable commonly known as a "S. E. (service entrance) cable" consisting of three separate wires each separately encased in white, red and black colored insulation material. The nature of the installation is designated in the trade as a two-wire type system, requiring the red wire to be taped to the white wire to indicate that so taped, they jointly thereby constituted the neutral wire, the remaining black wire thus becoming the positive or

charged wire. Evidence was introduced to establish that it is considered usual and prudent practice for installing electricians to connect the neutral wire to the ground electrode, for which purpose a corrugated metal-water pipe in the house plumbing system embedded in the earth may be used or, if no such pipe is conveniently available that a pipe be driven into the ground and connected to the system to serve the same purpose. The BX cable becomes a part of the circuit by connecting it to the neutral wire at the switch box. In following this practice, the neutral wire and the exposed BX cable sheathing possess no electrical potential and may be handled with safety after installation.

No ground or ground electrode connection of any nature was made at the time of installation. The defendant Kosuke Takai testified that he had advised Doris Ginoza that additional wall plugs would be required; that he had not completed installation of the system; and that there was no pipe in the kitchen to which the system could be grounded. Upon this issue the plaintiffs contend that at the time of completion of the installation agreed upon, they were tendered the following receipt evidencing that no further work remained to be done: "Received of Yuusei Ginoza the sum of Fifty and no/100 Dollars for Electric Work in full. TAKAI ELECTRIC COMPANY (signed) By K. Takai."

In compliance with installation procedure Doris Ginoza applied to the Hawaiian Electric Company, Limited for a service connection. That company installed the service connection in the following manner: Instead of connecting the positive wire from their service pole to the positive wire in the house system and the corresponding neutral wire from the service pole to the neutral wire of the house system, the connections were reversed, the connection so made causing the external sheathing of the

BX cable beneath the flooring to become actively charged with electricity for lack of ground. Had a ground connection been previously installed by the defendant Takai, or had the service-connection crew connected the positive wire of the house system and the corresponding neutral wires of the two systems, the external sheathing of the BX cable would not have become actively charged upon connection of the service. As a result of the connection so made, all other wiring installed except the BX cable sheathing was completely free from external charge and was serviceable, and permitted use of the newly installed fixtures without knowledge of the externally charged condition of the BX cable sheathing beneath the flooring.

During a severe storm approximately two months after installation, the decedent, assisted by his wife, who was holding a flashlight nearby, was trenching beneath the house to relieve the floods caused by the heavy rains. He suddenly uttered a cry and fell forward into a pool of shallow water. He was extracted from beneath the house within several minutes, but efforts at revival were unsuccessful. Preliminary diagnosis was death by drowning. The autopsy report assigned electrocution as the cause of death.

The decedent was 30 years of age, possessing a life expectancy of 37.74 years at the time of death, his widow 29 years old, and the children 2 years and 4 years. The decedent and his wife had previously conducted a restaurant business for a brief time, after which he secured employment as a mechanic's helper at several service stations over a period of two years at a salary ranging from $160.00 to $175.00 per month. The deceased later received employment at a service station in the vicinity of his new home at Ewa, where he was employed in a similar capacity at a salary of $165.00 per month at the time of his death. His last employer testified that he was a "good worker,"

"dependable," and an "energetic fellow" who displayed an interest in his work and was anxious to learn, seldom took a day off, often worked overtime, and that he had received two increases in salary, one of $10.00 and another of $5.00 per month in his first year of employment. The witness estimated that within a period of three to six years the decedent would have achieved the rating of a first-class mechanic at a salary level of approximately $300.00 per month.

The testimony of the widow established that she and her husband had enjoyed a "happy" marriage and that "he was kind to the children" and "he was good to me." The decedent was characterized as a quiet man of clean and temperate habits, possessing but few interests outside of his employment and family, and expending but $10.00 per month for his personal expenses, the balance of his earnings being regularly tendered to his wife to maintain his home and family.

The claim of the dependents against the Hawaiian Electric Company, Limited was disposed of by compromise in the sum of $7,500. The instant suit seeking damages of $100,000 was thereupon instituted against the appellants Kosuke and Shigeko Takai, doing business as the Takai Electric Company. Following trial before a jury, the dependents were awarded $80,000, apportioned $40,000 to the widow and $20,000 each to the two minor children.

Appellants' motion for a new trial was premised upon numerous grounds including most of the specifications assigned herein. The motion was denied. Judgment in the sum of $72,500 plus costs, was entered, that amount being computed by the trial judge deducting the $7,500, Hawaiian Electric Company settlement figure from the $80,000 verdict of the jury.

Appellants rely upon eight errors embracing diverse grounds. It is contended that the trial court erred in the

following respects: in permitting prejudicial argument to the jury by plaintiffs' counsel; in the giving of appellees' instruction number 28 upon the measure of damages which in two portions thereof omitted the term "pecuniary"; in the giving of appellees' instruction number 16 defining a new and independent cause; in the giving of appellees' instruction number 11 requiring the jury to determine whether prudent electrical contractors in Honolulu followed certain of the standards established by the national electric safety code and the electric code of the national board of fire underwriters applicable to installation of a "2 wire 120 Volt Alternating Current house electrical system"; in sustaining objections to questions propounded to certain of the appellees' witnesses upon cross-examination; in allowing leading questions to be asked of appellees' expert witness upon the issue of prudent practice in the electrical installation trade; in permitting the performance of a physical experiment before the jury when the facts sought to be thereby established had been admitted, and wherein there also existed a failure to establish a similarity of conditions existing at the time of death and those under which the experiment was performed; and finally, in refusing to grant a new trial upon the ground that the jury's verdict was excessive.

Specification number 1 alleges that the trial court erred in permitting plaintiffs' counsel to argue to the jury upon matters not within the issues of the cause, the argument being allegedly directed to the sympathies and prejudices of the jury. It asserts that one of the attorneys for appellees during the closing argument remarked: "that although the defendants could afford to pay for a transcript, the plaintiffs were poor and could not afford to do so."

We observe at the outset that there is but a negligible portion of the verbatim remarks referred to incorporated

in the transcript of the proceedings before us. Inasmuch as the arguments of counsel were apparently not recorded, we conclude from the absence of the quoted remarks relied upon that no request for recording of the argument was made at trial. (R. L. H. 1945, § 9732.) We conclude, therefore, that the remarks now relied upon and which do not appear in the transcript were composed or reproduced from memory or recollection of what transpired. The reproduction is now offered by appellants in three alternate versions in three separate portions of the record, viz: the bill of exceptions; the motion for a new trial, and in the brief of the appellants.

Conceding as we do, that the version presented in the specification is properly before us (R. L. H. 1945, § 9531), we nevertheless are constrained to elect, in view of the patent gravity of the error now urged, to momentarily pass the first portion of the alleged remarks as now enumerated for want of a more definite presentation of their precise wording. "There is some doubt, or at least there is a dispute shown by the record, and so asserted in the oral argument, as to whether the defendant did so comment. But if he did, and we admit that the record supports the assertion of the attorney for plaintiff in error, yet nevertheless the character of those remarks are not embraced within the record, nor is the language used brought to the attention of this court in such a way as to warrant us in considering it. If the exact words were incorporated into the record we might then be able to determine whether or not by so doing the defendant in error had gone beyond his legitimate privilege in the discussion of the case to the jury, and created such an error as would warrant a reversal of the judgment." (*Hurd* v. *Atkins,* 1 Colo. App. 449, 452, writ of error dismissed, 21 Colo. 259.)

We proceed in lieu thereof to the second portion of the

specification, the following proceedings relative thereto appearing of record:

"MR. CHUCK: Mr. Takai didn't go to the funeral.

"MR. TSUKIYAMA: That is objectionable, your Honor. Where is that kind of evidence. It wasn't brought out in the cross examination or direct examination anywhere.

"MR. CHUCK: Mrs. Ginoza said she saw him on October 6th, 1949, and did not see him again until December 28th, 1949.

"THE COURT: That is only an inference, but I guess you can argue on inferences.

"MR. CHUCK: He didn't come up to Mrs. Ginoza and say, 'I am sorry—'.

"MR. TSUKIYAMA: May I note an exception to this line, your Honor. It is definitely erroneous. This is something that goes to the core. The question of sympathy — there is nothing in the case that has been brought out about going to the funeral * * *. It is unfair, your Honor.

"THE COURT: That is a matter of argument and within the scope of inference . The objection is overruled."

Appellants contend that the trial court erred in permitting the remarks: "Mr. Takai did not go to the funeral," and, "He didn't come up to Mrs. Ginoza and say, 'I am sorry —'," to be made to the jury in that they constituted inflammatory and prejudicial argument of such degree as to constitute reversible error.

We are of the opinion that while the cases cited by appellants enumerate certain of the principles bearing upon the issue, they nevertheless are not only distinguishable in factual relationship, but also fail to support the appellants' theory when applied to the facts presented by the record before us. The remarks here under consideration are more comparable to those in the cases of *Carmody* v. *Trianon Co.,* 7 Wash. (2d) 226, 109 P. (2d)

560, an action for personal injuries wherein plaintiff's counsel during the course of argument referred to the "callousness" of one of the defendants toward the plaintiff's injuries, as indicated by the defendant's demeanor in the courtroom. Such argument was not held to be improper. In *Dallas Ry. & Terminal Co.* v. *Little,* (Tex. Civ. App. 1927) 109 S. W. (2d) 289, one of the issues presented on appeal by the railway company from a judgment awarded for the death of plaintiff's daughter, was that plaintiff's counsel injected prejudicial remarks in his argument to the effect that the defendant, its attorney and its employees "were indifferent to Jewell Little's death and suffering and indifferent as to her parents." The contention of prejudicial remarks was premised upon the following excerpt of the argument:

"Gentlemen, I am impressed in this case with the indifference of the Street Railway Company; of their employee Denton, the motorman, who was the originating cause of this, and that indifference is carried throughout the whole case and other employes and representatives of the Street Railway Company. * * * He tells you that the parents suffered nothing, he tells you that Miss Little [the deceased] did not suffer. * * * Mr. Charlton comes into the courtroom, again indifferent to the result of the accident, and has the temerity to tell you that E. O. Little and his wife, Minnie Little [the plaintiffs], suffered nothing by reason of the loss of their daughter; * * * he shows an utter indifference, Gentlemen, This is a routine matter with Charlton. * * * Gentlemen, that is not a matter that can be treated with indifference; a human life can't be treated that way."

In affirming the judgment it was noted: "Appellees' case was predicated altogether upon allegations as to the motorman's negligence, which, in our opinion, was just another way of saying that the motorman was indifferent

to the rights of the parties involved. * * * We do not think the argument was either unreasonable or prejudicial, under all the facts and circumstances." (*Dallas Ry. & Terminal Co.* v. *Little,* (Tex. Civ. App. 1927) 109 S. W. [2d] 289, 295.)

We consider the foregoing principles applicable to the circumstances before us. From a review of the entire record, it is evident that the comments of plaintiffs' counsel upon the failure of Mr. Takai to attend the funeral or to apologize to Mrs .Ginoza, were remarks characterizing callousness or indifference, which of themselves, in the circumstances presented cannot be termed prejudicial in such degree as to result in manifest injustice. (*Carmody* v. *Trianon Co.,* 7 Wash. [2d] 226, 109 P. [2d] 560; *Dallas Ry. & Terminal Co.* v. *Little* (Tex. Civ. App. 1927) 109 S. W. [2d] 289.) "It may be, counsel indulged in intemperate language not justified by anything in the case; but the manner of conducting the oral argument before the jury is so much within the discretion of the trial court that this court will hesitate to interfere, unless it should appear manifest injustice was done." (*Chicago R. R. Co.* v. *Pillsbury,* 123 Ill. 9, 26, 5 Am. St. Rep. 483, 489, 14 N. E. 22, 25.) "The whole matter of prejudicial argument was before the trial court, and the judge was in a position to know all that was said, how it was said, and all the surrounding circumstances of the trial." (*Crews* v. *Kansas City Public Service Co.,* 341 Mo. 1090, 1105, 111 S. W. [2d] 54, 62; R. L. H. 1945, § 10121.) We find no convincing showing of error and prejudice made by the appellants. "We interfere with the result of a trial upon grounds so shown with reluctance, and only upon a convincing showing of error and prejudice." (*Barr* v. *Clinton Bridge Works,* 179 Iowa 702, 711, 161 N. W. 695, 698.) Momentarily departing from the order of the specifications of error cited *supra,* we will consider specification of error number

8 since it also relates to the alleged improper remarks.

Appellants contend that the award of damages by the jury in the sum of $80,000, later reduced to $72,500 plus costs, was excessive, and of itself demonstrates that the jury was impassioned and prejudiced by the alleged improper remarks of counsel. We find no merit to this contention. The statute under which recovery herein was sought is abundantly broad in its terms governing the allowable orbit of damages. It provides in part that in "every action under this section *such damages may be given as under all the circumstances may be just* and the trial court shall apportion the damages given among all the dependents." (R. L. H. 1945, § 10486; underscoring added.) No measurable standards or limitations are prescribed to restrain the discretion of a jury or trial judge other than that damages "may be given as under all the circumstances may be just." This court in *Enos* v. *Motor Coach Co.,* 34 Haw. 5, 7, proscribed the additional limitation that "damages awarded must be compensatory and must be confined to compensation for the pecuniary loss suffered by the dependents." In this connection appellants cite the annotation in 17 A. L. R. (2d) 836 wherein jury awards in death actions are classified as to excessiveness. Precedent upon the issue of excessive verdicts and particularly for loss of support are determinable each upon the particular circumstances presented and a review of these cases reveals no analogous factual situations to the instant case which support appellants' contentions.

In *Vasconcellos* v. *Juarez,* 37 Haw. 364, 365, 366, this court held that: "Controlling the question of excessive damages is the general rule of law, well settled in this jurisdiction, that a finding of an amount of damages is so much within the exclusive province of the jury that it will not be disturbed on appellate review unless palpably

not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them."

"The power of this court to disturb a verdict on the ground of excessive damages is one which should be exercised with great caution and discretion, the duty of guarding against excessive verdicts necessarily resting to a large extent with the trial judge and a reviewing court giving great weight to the trial judge's approval of the verdict. Consequently it ordinarily will not do so where, as here, the trial judge has tacitly approved the verdict as not being excessive and no charge is made of abuse of judicial discretion. Nor will it do so where, as in this case, the record shows (1) that presumably the issue of damages was fairly presented under proper instructions, there being an absence of anything to the contrary; (2) that although the evidence on such issue is in conflict, the appellant does not contend, except by implication, that no part thereof sustains the verdict nor that the conflict may not be determined in support thereof; and (3) that such amount of damages awarded is concededly within the allegations of the complaint."

In determining the damages herein the jury was clearly instructed that in considering the elements comprising the damages alleged they apply the following principles:

"You are instructed that if you find that the Defendants' negligence was the proximate cause of the death of YUUSEI GINOZA, you will assess the damages in such an amount as will fairly compensate the deceased's widow and children for such damages as are shown by the proof to have been sustained by them, if any, caused by the death of YUUSEI GINOZA, allowing the widow such amount of pecuniary damage as she has suffered, if any,

by reason of the death of her husband, discounting such damage to the present value of the amount that, in your judgment, the deceased would have contributed to the support and well being of his wife during his lifetime, and the damage, if any, arising from the loss of care, attention, acts of kindness and the comfort and solace of his society, having regard to the probable duration of his life, the amount he has customarily contributed to the support and well being of his wife, if anything, and what in your judgment, he would have contributed to her during the remainder of his life but for the accident causing his death, taking into consideration the age, health, habits, expectation of life, mental and physical capacity for and disposition to labor, and the probable increase or diminution of that ability with the lapse of time, his earning power and rate of wages; and allowing the children such amount of pecuniary damages as they have suffered, if any, by reason of the death of their father, discounting such damage to the present value of the amount that, in your judgment, the deceased would have contributed to the support, maintenance, education, nature, care and training, if any, which the father would have given to the children during their dependency, and the damage, if any arising from the loss of care, attention, acts of kindness and the comfort and the solace of his society, having regard to the probable duration of his life.

"Your aggregate award for all the Plaintiffs cannot exceed One Hundred Thousand Dollars ($100,000.00).

"In computing the damages sustained by all the Plaintiffs you must first deduct from the entire expected earnings of the deceased all of his probable personal expenses."

We find that the foregoing instruction abundantly and fairly presented the principles of law applicable to the issue of damages as presented by the record before us. The

evidence establishes that the decedent was 30 years of age at the time of his death, possessing a life expectancy of 37.74 years; that he was in good health; that he had been employed as a mechanic's helper for approximately one year immediately preceding his death, having worked at similar employment previously; that he was earning a salary of $165.00 per month at the time of death; that he was a conscientious and dependable employee displaying a conscientious willingness to learn; that he had received two salary increases during the year of employment immediately prior to his death; and that in a period from 3 to 6 years thereafter he would probably have developed into a first-class mechanic at a salary of approximately $300.00 per month; that his marital life was a normal and happy one in that he was of sober and temperate habits and was "kind to the children" and "good" to his wife; that he expended only approximately $10.00 per month upon himself, the remainder of his earnings being regularly tendered to his wife to be applied to the maintenance of his home and support of his family.

Assuming, as we find the jury was warranted in so doing in applying the evidence to instruction number 28, that the decedent would have developed into a first-class mechanic within a period not in excess of six years, his gross earnings would have amounted to approximately $126,140. Such result is computed by application of the following formula predicated upon the foregoing hypothesis and applicable instruction:

Earnings for first 6 years; 6 x (12 mos. x $165/mo.) = $11,880.

Earnings for remaining 31.74 years of life expectancy: 31.74 x (12 mos. x $300/mo.) = $114,264.

Total earnings over period of life expectancy of 37.74 years = $126,144.

The jury was thereupon instructed to reduce such gross

earnings to their present value and "in computing the damages sustained by all the Plaintiffs [they] must first deduct from the entire expected earnings of the deceased all of his probable personal expenses." Under the evidence adduced, such probable personal expenses at the rate of $10.00 per month would have totaled approximately $4,529 for the period of his life expectancy. This amount deduced from the total expectancy earnings would be the sum of $121,615 in damages to the plaintiffs, which sum is greatly in excess of the judgment sought in the complaint, i.e. $100,000. Given, as the jury was, the preceding hypothetical facts and applicable instructions, we do not consider the verdict of $80,000 as excessive.

Assuming arguendo that the decedent's earnings did not increase but continued at the rate of $165.00 per month during the remainder of his life expectancy, his anticipated earnings computed upon the foregoing formula would amount to approximately $70,196 over the same period:

Total earnings over life expectancy of 37.74 years, 37.74 x (12 mos. x $165/mo.) = $74,725.

Less: Probable expenses 37.74 x (12 mos. x $10/mo.) = $4,529.

Total net earnings: $70,196.

While the foregoing amount is substantially less than the jury award of $80,000 it includes only damages for the wife's loss of "support and well being" and the children's loss of "support, maintenance, education, nurture, care, and training, if any, which the father would have given the children during their dependency. * * *" (Instruction number 28.) Under the evidence and the applicable instructions the jury would moreover have been warranted if it had so found, in awarding the additional $9,804 over and above the loss of the decedent's expected earnings of $70,196 as damages "arising from the loss of care, attention, acts of kindness and the comfort and solace of his

society." That damages may be awarded for such loss is settled in this jurisdiction. (*Enos* v. *Motor Coach Co.*, 34 Haw. 5; *Young* v. *Honolulu Construction & Draying Co.*, 34 Haw. 426.) Nor can it be argued that such damages would have been excessive in the circumstances presented. In *Gabriel* v. *Margah*, 37 Haw. 571, 582, this court said: "To acts of kindness and attention no standard of value is applicable nor are they capable of exact estimation except as they might accompany and be a part of service in the family. Hence it is that while in an action of this kind pecuniary damages are the limit of recovery, they include compensation for losses which are difficult of exact estimation and to which no standard of value may be applied and the damages for which are and necessarily must be left to the sound discretion of the trier of facts." Applying instruction number 28 to both the hypothetical-factual illustrations *supra,* and observing the resulting possible maximum and minimum verdicts that could have reasonably been allowed by the jury upon those facts, we find that the verdict of $80,000 was not excessive within the principles enunciated in *Vasconcellos* v. *Juarez,* 37 Haw. 364.

In specification number 2 appellants assign that the trial court erred in failing to insert the modifying word "pecuniary" before the clauses in instruction number 28 allowing the jury to assess the "damage if any, arising from the loss of care, attention, acts of kindness and the comfort and solace of his society." This contention, now raised for the first time on appeal, has no merit in view of the appellants' failure to request the trial court to correct the alleged error and in view of the further fact that the modifying term "pecuniary" twice appears in other portions of instruction number 28: first, in the general clauses allowing the widow such pecuniary damages as she has suffered "by reason of the death of her

husband"; and second, in a similar clause governing pecuniary damages suffered by the children "by reason of the death of their father." In *Herbert v. Kansas City Elev. R. Co.*, 91 Kan. 605, 138 Pac. 641, 50 L. R. A. (N. S.) 850, it was held that the charge in a death case that the jury might consider the loss to the widow of society, aid, and comfort of a deceased husband did not constitute prejudicial error where, in the same instruction, the trial court twice recited that damages could be predicated only upon pecuniary loss. We are of the opinion that the error, if any, was one of misdirection; and while it may be argued that insertion of the term "pecuniary" would have further clarified the instruction, the trial court's failure to include such limiting or cautionary term did not constitute prejudicial or reversible error in the circumstances here presented. Nor was such clarification requested below. "The defects * * * constitute 'sins of omission rather than of commission.' The instruction did not contain a misdirection to the jury but rather may be characterized as an *incomplete* direction. In such case, an appellant is in no position to complain, where he does not ask for a more specific and explicit instruction." (*Peluso* v. *City Taxi Co.*, 41 Cal. App. 297, 301, 182 Pac. 808, 809; *Territory* v. *Furomori*, 20 Haw. 344.)

Specification of error number 3 contends that the trial court erred in giving instruction number 16 defining a "new and independent cause"; in that the instruction as given implied that unless a new and independent cause could have of itself caused the injury, the causal connection was not broken. Upon a review of the applicable law, we are of the opinion that the error, if any, was harmless. In *Stedman Fruit Co.* v. *Smith*, Tex. Civ. App. 28 S. W. (2d) 622, 627, an identical instruction was considered and held not to constitute reversible error "unless we are able to say that the definition of the term complained of was

affirmatively erroneous or so clearly insufficient as to be no definition of the term 'new and independent cause.' " Furthermore, the record is bare of any objection or request for a further or amended instruction defining a "new and independent cause." "* * * even though the instructon is ambiguous, or misleading * * * the mere saving of an exception to it without any request for further instructions, presents no error for us to consider." (*Territory* v. *Furomori*, 20 Haw. 344, 350.)

Specification of error number 4 urges that the trial court erred in giving appellees' instruction number 11, in that it required the jury to find whether or not prudent electrical contractors in Honolulu followed the standards established in designated electrical safety codes, contending that this requirement was confusing since it focused the attention of the jury upon whether or not appellants followed those codes and not upon the issue of whether they were negligent. No cases are cited by appellants in support of this contention. We are of the opinion that the contention is without merit, for a reading of the instruction as a whole and together with the other instructions given concerning the degree of care to be exercised by electrical contractors in installing house systems completely dissolves the alleged confusion. "In determining the sufficiency of a particular instruction, or part of a charge, it is not to be considered apart from its context, or the rest of the charge. Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may

be objectionable, as inaccurate or misleading, will not constitute ground for reversal." (*Ciacci* v. *Woolley,* 33 Haw. 247, 261, 262.)

Appellants' specification number 5 alleges that the trial court erred in refusing to permit appellants' counsel to cross-examine appellees' expert medical witness upon whether the decedent could have fainted and succumbed from drowning in a pool of water six inches deep rather than from electrocution. It is contended further that the trial court erred in sustaining an objection during cross-examination of appellees' witness, the operating superintendent of the Hawaiian Electric Company, Limited, to a question upon whether, of his personal knowledge, he knew if the Hawaiian Electric Company, Limited, would make a connection into a house "without determining the ground." Appellants cite no cases to support these contentions. "The law is well settled in this jurisdiction that the manner of the introduction of testimony and the latitude to be allowed counsel, particularly on the cross-examination of witnesses, is largely vested in the discretion of the trial court and that this discretion will not be reviewed by the appellate court except in clear cases of abuse." (*Flint* v. *Flint,* 15 Haw. 313, 315; *Ahmi* v. *Waller,* 15 Haw. 497; *Booth* v. *Beckley,* 11 Haw. 521.) We find no abuse of discretion by the trial judge in sustaining the objection.

Appellants' specification number 6 asserts that the trial court erred in permitting appellees' counsel to examine their expert witness upon the issue of prudent practice in Honolulu by leading questions to the effect that as a prudent electrical contractor, whether he would "ever leave a system without a ground?" A similar situation was presented in *Ciacci* v. *Woolley,* 33 Haw. 247, where after plaintiff's counsel asked the witness: "And at the time of this accident, you were exercising due care?"

The overruling of defendant's objection was cited as reversible error. In affirming judgment for the plaintiff below this court held: "* * * The better practice, perhaps, would have been to sustain defendant's objection. However that may be, the propriety of permitting leading questions rests in the discretion of the trial court and the allowance of such a question is not reversible error unless it is shown that the discretion has been abused to the prejudice of the appellant." (*Ciacci v. Woolley, supra,* 255, 256.) In the instant case, this witness, along with others, was examined upon the issue of whether a prudent electrical contractor would install and leave an electrical system without a ground; and while the witnesses gave conflicting testimony in answer to questions propounded to them, nothing in the record discloses that the appellants have been prejudiced by such testimony, nor is any abuse of discretion shown.

Appellants' specification number 7 urges that the trial court erred in allowing one of appellees' witnesses to perform an electrical experiment in the presence of the jury when it was expressly admitted that no similarity existed between the equipment used in the experiment and that used in the Ginoza installation. The experiment purported to demonstrate to the jury what would occur on connection of a service line by the Hawaiian Electric Company to the Ginoza house system, viz: First, if the system installed had been grounded a flash and a noise would have resulted thereby indicating an improper connection by the Hawaiian Electric Company; Second, if the system installed had not been grounded as here, no spark or noise would occur under any circumstance. In *Franks v. Jirdon,* 146 Neb. 585, 591, 20 N. W. (2d) 597, 600, it was held: "One desiring to make an experiment in court or to introduce evidence of an experiment made out of court should first show that the experiment is to be made or was made, as the case may be, under conditions and circumstances

similar to those prevailing at the time of the occurrence involved in the controversy; otherwise, the courts will not, as a general rule, permit the making of the experiments or the introduction of evidence thereof. It is not, however, necessary in order to render experiments permissible or to admit evidence of experiments made out of court that the conditions be identical with those existing at the time of the occurrence; it is sufficient if there is a substantial similarity. Minor variations in the essential conditions go to the weight rather than to the admissibilty of the evidence. If, on the other hand, the requirement of substantial similarity is not satisfied, the courts have uniformly refused to admit experimental evidence." In the record before us it was admitted by the witness that the transformer used in the experiment possessed a capacity equal to or less than that at Honouliuli serving the Ginoza house, but that the only resulting departure from similarity would be to lessen the intensity of the noise and flash which would result when the wires were improperly connected, assuming the system installed in the Ginoza house had been grounded when installed. Appellees' answer to the contention of dissimilarity of conditions is that they, rather than the appellants were prejudiced in that the anticlimatic effects of the experiment would be lessened by a noise and flash of lesser intensity than if similar conditions were presented. We do not perceive such dissimilarity of conditions as so detracting from the intended purpose of the experiment, which was to give the jury a better understanding of the scientific and more technical phases of the evidence, as operating to appellants' prejudice. Under such circumstances we are of the opinion that the conditions under which the experiment was performed and those existing at the time of the occurrence of the alleged acts of negligence on the part of the Hawaiian Electric Company, Limited were substantially

similar. "This court recognizing the difficulties attending an offer of evidence of illustrative experiments has adopted the rule that in such cases a discretion is conferred upon the trial court and that unless there is a clear abuse of discretion a judgment will not be reversed on account of the admission or rejection of such evidence." (*Franks* v. *Jirdon,* 146 Neb. 585, 591, 20 N. W. [2d] 597, 600.) No abuse of discretion has been shown.

By way of cross appeal the plaintiff-appellants contend that the trial court erred in reducing the $80,000 verdict of the jury and entering judgment for $72,500 exclusive of costs, the variance of $7,500 being the consideration tendered to the plaintiff-appellants for the release of the Hawaiian Electric Company, Limited, prior to institution of these proceedings.

The pertinent portions of the judgment recite: "Pursuant to the Verdict of the Jury made, found and returned in the above entitled matter on December 19, 1952, and the Court being cognizant of the evidence adduced at the trial showing payments made to the plaintiffs by the Hawaiian Electric Company, Limited, shown to be a joint tort-feasor with the defendants as indicated by the evidence adduced at the trial;

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiffs above named have judgment against the defendants above named * * *."

Plaintiff-appellants contend first, that the court erred in reducing the verdict and entering judgment for the lesser amount when the released tortfeasor, the Hawaiian Electric Company, Limited was not a party defendant in the proceedings; and second, assuming the trial court possessed the power to so reduce the verdict, its finding that the Hawaiian Electric Company, Limited, was shown to be a joint tortfeasor was not supported by the law and the evidence.

The issues raised by these contentions are novel in this jurisdiction. We are of the opinion that section 10490 of the Revised Laws of Hawaii 1945 (S. L. 1941, c. 24, § 1), The Uniform Contribution Among Tortfeasors Act, as interpreted in the annotations to section 4 of the Uniform Act (9 Uniform Laws Ann., p. 164) from which our statute is taken, is controlling.

Section 10490 of the Revised Laws of Hawaii 1945, provides: *"Release; effect on injured person's claim.* A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

In the note of the National Conference of Commissioners on Uniform State Laws to section 4 of the Uniform Act, *supra,* we find that the section was intended by the framers of the Act to alter the common-law view under which a release executed by an injured person to one of two or more tortfeasors automatically released all the other joint tortfeasors. This result as is noted, may be circumvented by the execution of a covenant not to sue in lieu of a release; but the framers of the Act, wisely, it is observed, considered it preferable to obviate the technical pitfalls frequently encountered by a plaintiff who has released one of two or more joint tortfeasors for a consideration intending to later pursue his claim against the others, only to then discover that his claim is barred.

"The second clause of this Section is included simply to emphasize the fact that a release of one tortfeasor will benefit the others by reducing the claim against them in the amount of the consideration paid therefor, or in the amount or proportion by which the release provides that

the total claim shall be reduced, whichever is larger."

"Suppose P is hurt, apparently by the concurrent negligence of A and B. He wishes to pursue his remedy against B but wants to let A off lightly. For $100 paid he releases A and then sues B. The jury might fix P's damages and the court might then deduct $100 from the amount of the verdict before entering judgment. Thus, on a verdict for P against B of $2000, the court would enter judgment for $1900. Although this could be handled by introducing evidence before the jury of a payment of $100 and by letting the jury take that into account in fixing P's damages, this method would be less satisfactory than the solution suggested in the previous sentence." (*Uniform Contribution Among Tortfeasors Act*, § 4, n. 9 U. L. A. 164.)

The factual situation here presented is essentially parallel to the illustration cited *supra*. One asserted joint tortfeasor, the Hawaiian Electric Company, Limited, was released in consideration of payment of the sum of $7,500 prior to institution of the instant proceeding against the defendant-appellees herein. The jury returned a verdict of $80,000 in favor of the plaintiff-appellants which the court reduced to $72,500, exclusive of costs, thereupon entering judgment for that amount, the difference of $7,500 representing the amount of the consideration tendered for the release of the Hawaiian Electric Company, Limited.

The jury was amply instructed in respect to the effect to be accorded to the consideration tendered for the release by the following instruction:

"You are instructed that in computing the total amount of damages sustained by the Plaintiffs as a result of the death of YUUSEI GINOZA, you are not to consider the amount paid to them by the Hawaiian Electric Company, Limited, but should determine the total amount of

damages so sustained by reason of said death without reference to such a payment.

"If the circumstances are applicable under the law the Court will take into consideration said amount in rendering its judgment."

We conclude that the action of the trial court first, in instructing the jury to exclude the payment by the Hawaiian Electric Company, Limited, from their consideration; and second, in reducing the verdict returned against the defendant-appellees by the amount paid for its release, was, in the circumstances, in accord with the intent and interpretation of section 10490 as premised upon section 4 of the Uniform Contribution Among Tortfeasors Act, 9 U. L. A. 164, which our statute embodies. (See also *Geim* v. *Williams,* 215 Ark. 705, 222 S. W. [2d] 800; *Raughley* v. *Delaware Coach Co.,* 91 A. [2d] 245.) Plaintiff-appellants' contention that the Hawaiian Electric Company, Limited, should have been a party to the proceedings below in order to enable the trial court to so reduce the verdict is without merit. Section 4 of the Uniform Act, 9 U. L. A. 164 (R. L. H. 1945, § 10490), contains no provision requiring that there be joinder of a released tortfeasor in order to accord a defendant of record the benefits of that section. To reinstate the jury's verdict as plaintiff-appellants now urge and permit the recovery of $80,000 in these proceedings in supplementation of the $7,500 which plaintiff-appellants have already received as consideration for the release of the Hawaiian Electric Company, Limited would result in defeating the settled rule that "* * * there shall be but one satisfaction accorded for the same wrong." (*Jacobsen* v. *Woerner,* 149 Kan. 598, 89 P. [2d] 24, 28.) Section 10490 does not alter that fundamental principle, but on the contrary effectuates it by removing the technical pitfalls formerly encountered by plaintiffs under the doctrines relating to

common-law releases, and at the same time clarifies the status of bona fide settlements and releases by retaining certain of the features pertaining to common-law covenants not to sue. (*Uniform Contribution Among Tortfeasors Act,* § 4, 9 U. L. A. 164, n.; Gregory, *Contribution Among Tortfeasors; A Uniform Practice,* 138 Wis. L. Rev. 365, 391 to 393.) The effect of section 4 (R. L. H. 1945, § 10490) "upon the injured person's claim against the remaining defendant is to reduce it in an amount at least as great as the consideration paid for the release, and even greater than the figure if it so provides. In this manner, it bars the plaintiff from obtaining a double recovery." (*Raughley* v. *Delaware Coach Co.,* 91 A. [2d] 245, 247.)

Plaintiff-appellants also contend, in the alternative, that the law and the evidence fail to support the finding of the trial judge that the Hawaiian Electric Company, Limited was "shown to be a joint tort-feasor with the defendant as indicated by the evidence adduced at trial." It is argued that in order to accord the benefits of section 10490 to the defendant-appellees the trial judge must have first determined that the Hawaiian Electric Company, Limited was in fact negligent. No precedent is cited to support this contention. In view of the novel question presented by the contention, and the paucity of authority interpreting the provision (*Uniform Contribution Among Tortfeasors Act,* § 4, 9 U. L. A. 164), we find, upon review of the authorities, that at common law the effect of a release of one alleged joint tortfeasor from liability upon the liability of another alleged joint tortfeasor for the same wrong was governed by a determination of whether the person so released was in fact or in law liable for the plaintiff's injuries. (*Carroll* v. *Kerrigan,* 173 Md. 627, 197 A. 127; 45 Am. Jur., *Release,* § 38.) There appears no necessity to here elaborate the numerous and conflicting views

interpreting the common-law rule. It is sufficient to state that applicable precedent uniformly discloses a manifest and patent attempt to ameliorate the harshness and potential injustice resulting from application of the common-law rule to every cause wherein a release of one joint tortfeasor for a consideration constituting full satisfaction of a claim discharges all other joint tortfeasors assertedly liable for the same wrong. Conversely, it was, as has been elsewhere cited herein, the intent of the framers of the Uniform Act to unequivocally abolish the technical rules governing releases which in their application to asserted liability of joint tortfeasors have on so many occasions constituted pitfalls for the unwary litigant with much unwarranted litigation, and to finally inject certainty in the Act in place of that conflicting area of varied principles. (*Uniform Contribution Among Tortfeasors Act*, § 4, 9 U. L. A. 164. See also annotations in 50 A. L. R. 1093, 66 A. L. R. 213, 104 A. L. R. 861, 124 A. L. R. 1315.) Such intent is convincingly gleaned from a reading of the entire Act which nowhere either expressly or impliedly requires or burdens a trial court with the necessity of determining whether or not a released tortfeasor was in fact or law a tortfeasor prior to its reducing a claim against a defendant of record by the amount paid for the release or by a greater amount if the release so provides.

Section 10487 of the Revised Laws of Hawaii 1945, defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or to property, *whether or not judgment has been recovered against all or some of them."* (Underscoring added.) Section 10490 of the Revised Laws of Hawaii 1945, provides: "A release by the injured person of one joint tortfeasor, *whether before or after judgment,* does not discharge the other tortfeasors unless the release so provides;

but reduces the claim against the other tortfeasors * * *." (Underscoring added.)

Only by final judgment may a conclusive determination of liability be fixed. Section 10487 does not require that judgment be theretofore recovered to constitute a person a joint tortfeasor for purposes of the Uniform Act, nor does section 10490 require a judgment against the released tortfeasor in order to validly effect a reduction of the claim against the other alleged tortfeasors. We therefore conclude that no determination of the asserted negligence of the Hawaiian Electric Company, Limited, was requisite to the exercise by the trial court of its power to reduce the verdict by the amount tendered for the release of that company.

The first contention of the plaintiff-appellants is without merit, and we conclude from a review of the proceedings had below that the finding: "the Court being cognizant of the evidence adduced at the trial showing payments made to the plaintiffs by the Hawaiian Electric Company, Limited, shown to be a joint tort-feasor with the defendants as indicated by the evidence adduced at the trial" was warranted, but does not in any manner constitute a determination of the issue of the company's liability for contribution to the defendant-appellees in any subsequent litigation between them. (See *Uniform Contribution Among Tortfeasors Act,* § 5, 9 U. L. A. 165; R. L. H. 1945, § 10491.) "It will be deemed sufficient if there is an appearance of liability; that is, something in the nature of a claim on the one hand, and a possible liability under the rules of law on the other." (*Jacobsen* v. *Woerner,* 149 Kan. 598, 603, 89 P. [2d] 24, 28.)

Judgment affirmed.

Cross appeal dismissed.

*F. D. Padgett* (*Tsukiyama & Yamaguchi* and *Robert-*

*son, Castle & Anthony* with him on the briefs) for defendants-appellants in case No. 2936.

*W. G. Chuck & K. Miho* (*Fong, Miho, Choy & Chuck* on the brief) for plaintiffs-appellees in case No. 2936.

*W. G. Chuck & K. Miho* (*Fong, Miho, Choy & Chuck* on the briefs) for plaintiffs-appellants in case No: 2937.

*F. D. Padgett* (*Tsukiyama & Yamaguchi* and *Robertson, Castle & Anthony* with him on the brief) for defendants-appellees in case No. 2937.